649 P.2d 1221

James K. OWENS and Gwen A. Owens, husband and wife, Plaintiffs-Appellants,

v.

IDAHO FIRST NATIONAL BANK, Defendant-Respondent.

No. 13699.

Court of Appeals of Idaho.

Aug. 17, 1982.

J. Ray Cox, Charles F. Bean, Cox & Davis, Coeur d'Alene, for plaintiffs-appellants.

Samuel Eismann, Coeur d'Alene, for defendant-respondent.

BURNETT, Judge.

We are asked to decide whether a bank wrongfully caused real property to be sold by a trustee under a deed of trust. A lawsuit for damages was brought by James and Gwen Owens, whose property was sold after they defaulted on a note to Idaho First National Bank, secured by the deed of trust. They claimed that certain conduct by the bank's officers had frustrated a timely cure of the default. The district court decided in favor of the bank, and we affirm.

Although numerous contentions have been made, this appeal essentially raises two issues: (1) Did the property owners make a timely tender to cure the default? (2) If not, was the bank estopped to reject a late tender? Because we conclude that the bank has no liability to the property owners, we do not reach questions concerning the value of the subject property, which would relate to the measure of damages claimed.

I

The loan in question was made in 1973. In 1975 the property owners moved from Idaho, leaving their affairs in the hands of an agent. When default occurred, the bank requested the trustee, a local title company, to give notice of the default and to conduct a sale under the deed of trust. The trustee recorded a notice of default on December

15, 1975. Pursuant to I.C. § 45–1506(12) (1977), this date marked the beginning of a period, extending 115 days, during which the sale could be averted by curing the default. The last day for cure was April 8, 1976.[1]

The trustee also published a notice of sale, indicating that the property would be sold on May 5, 1976. During February, 1976, the property owners' agent in Idaho read the published notice of sale, but did not discuss it immediately with the owners. However, on March 30 or 31, the agent received funds from sale of other land on behalf of the property owners; and on April 2, the property owners instructed him to ascertain the amount of the delinquency on the loan in question. The agent telephoned an assistant bank manager on April 5 or 6, and asked the amount necessary to "clear the transaction and stop the default." The agent later testified that the assistant manager said he had to "get some figures" and asked the agent to call back. On April 6 or 7, the agent called again, and a bank teller gave him "the exact figures as far as what it would take [to bring the principal amount current], then he gave me the figures on the other costs to satisfy ... the default." The amount was approximately .$1,500. The agent testified that on April 6, 7 or 8, he reported this information to the property owners, who directed him to deliver $3,000—enough to cure the deficiency and to prepay part of the note—to the bank. According to his testimony, the agent called the bank the "next day"— which would have been April 7, 8 or 9—and informed the manager that he had $3,000 to "pay and prepay" the note; but the manager replied that he would "have to check to see whether or not we can accept it." The bank manager testified that he recalled no such conversation.

In any event, the agent did nothing further until the cure deadline had passed. He testified that he failed to appreciate the urgency of the situation because he mistak-

enly believed that the cure period was 120 days rather than 115, and because he erroneously assumed that the 120th day would be the date of sale, May 5, 1976.

On April 13, five days after the cure period had ended, the agent purchased a $3,000 cashier's check. A few days thereafter he informed the bank manager of his intent to make the payment, but was told that the bank would not accept it. On or about May 3, the agent physically tendered the cashier's check at the bank, but it was rejected. The property was sold as scheduled on May 5. The loan was fully paid by proceeds of the sale, but the owners lost whatever "equity" value might have existed in the property.

Upon these facts, the property owners argue that they effectively tendered a cure of the default during the disputed telephone conversation on April 7, 8 or 9, when their agent said he had the money but the bank manager replied that he would have to see if a payment could be accepted. Even if we presume that this conversation took place, and that it occurred on or before the April 8 deadline, we do not believe that the facts show a tender. In *Pollard Oil Co. v. Christensen,* 103 Idaho 110, 645 P.2d 344 (1982), our Supreme Court recently quoted and adopted the following statement in 74 Am.Jur.2d *Tender* § 7, at 549–50 (1974):

> A mere offer to pay does not constitute a valid tender, the law requires that the tenderer have the money present and ready, and produce and actually offer it to the other party. Tender implies the physical act of offering the money or thing to be tendered, but this cannot rest in implication alone. The law requires an actual, present, physical offer; it is not satisfied by a mere spoken offer to pay, which, although indicative of present possession of the money and intention to produce it, is unaccompanied by any visi-

1. The property owners have suggested that the 115-day period ended on April 9. However, the district court found that April 8 was the last

day, and our count of the days—including February 29, because 1976 was a leap year—sustains the district court.

ble manifestation of intention to make the offer good.

103 Idaho 116, 645 P.2d at 350.

█ The district court in this case held that no timely tender had been made. In view of the principles adopted in *Pollard*, we agree. At most, it may be said that the agent, on April 7, 8 or 9, made a "spoken offer to pay," which does not constitute a valid tender. The evidence discloses no "actual, present, physical offer," until May 3, nearly a month after the cure period had expired.

█ The property owners next argue, conversely, that a timely physical tender was unnecessary because it would have been futile. They point again to the statement attributed to the bank manager during the disputed telephone conversation of April 7, 8 or 9, that he would check to see if a payment could be accepted. The general principle advanced by the property owners is sound. A tender otherwise indispensable is no longer required when its futility is shown. "[A]n offer and a refusal is futility enough." *Loomis v. Imperial Motors, Inc.*, 88 Idaho 74, 77, 396 P.2d 467, 468 (1964). However, the record discloses no showing of futility in this case. The bank manager's reported statement, that he would check to see if a payment could be accepted, was not a refusal. The record shows no reason for the reported statement other than uncertainty as to whether the time for cure had expired. The assertion of futility begs the underlying question of timeliness. If a tender had been made when the disputed conversation occurred—and if the date of the conversation were no later than April 8—the bank would have been required to accept the tender. The tender would not have been futile. On the other hand, if the time had already expired, when the disputed conversation took place, the futility issue would have been mooted.

█ The property owners further contend that the disputed telephone conversation triggered application of I.C. § 29–112. This statute provides as follows:

All objections to the mode of an offer of performance, which the creditor has an opportunity to state at the time to the person making the offer and which could be then obviated by him, are waived by the creditor if not then stated.

As nearly as we can discern, the property owners' argument appears to be that if the bank intended to refuse the payment, its manager had a duty under the statute to say so, and to explain why. We believe reliance upon the statute is misplaced. Assuming, again, that the disputed conversation actually occurred, the statute would apply only to "objections to the mode of an offer of performance." The bank's "objection"—if it may be so characterized—was based upon the lateness of the tender, not upon the "mode" of payment or of any offer to pay. We see nothing in I.C. § 29–112 that would have required the bank to anticipate a late tender and to give special notice of the obvious—that an untimely tender could be rejected. We conclude that the property owners' failure to effect a timely cure was not excused by application of I.C. § 29–112.

## II

The property owners contend that the bank was estopped to insist on a timely tender, by failing promptly to advise the agent of the amount of money necessary to cure the default, and by accepting a late tender in another transaction. The first part of this contention fails on the record. As noted earlier, the agent testified that a bank teller had informed him, on April 6 or 7, that approximately $1,500 would be required, including incidental expenses. The district court found that the agent had been informed "with sufficient exactitude to enable him to make a tender within the 115 day [period]." This finding is supported by substantial and competent evidence. It will not be set aside. *E.g., Shelton v. Boydstun Beach Ass'n*, 102 Idaho 818, 641 P.2d 1005 (Ct.App.1982).

█ Because we uphold a finding that the bank furnished the information in question, we do not reach the issue of whether

liability might have resulted from failure to do so. The bank was not the sole source of information concerning the amount needed to cure a default. The same information could have been obtained from the trustee under the deed of trust.

The property owners next argue that the bank was estopped to assert its right to reject a late tender, because in an unrelated transaction between the parties, the bank accepted a late payment which completely discharged a delinquent note. The property owners urge that the bank's acceptance of the late tender on the other note established a course of conduct upon which they were entitled to rely.

Our Supreme Court recently has clarified the elements of equitable estoppel in Idaho. In *Idaho Title Co. v. American States Ins. Co.*, 96 Idaho 465, 468, 531 P.2d 227, 230 (1975), the court, citing its earlier decision in *Bjornstad v. Perry*, 92 Idaho 402, 443 P.2d 999 (1968), said the following:

> Equitable estoppel generally requires that a false representation or concealment of a material fact be made with actual or constructive knowledge of the true state of facts; and the party to whom the false representation was made was without knowledge or the means of acquiring knowledge of the real facts; that the false representation was made with the intent that it be acted upon; and that the party to whom it was made relied and acted upon it to his prejudice.

Upon our review of the record, we are not persuaded that the elements of false representation or concealment were established. However, in any event, the district court found that the property owners' agent did not, in fact, rely on the bank's acceptance of a late payment in the other transaction, as a reason for making a late tender in this case. The court further found that any such reliance would have been unjustified, because acceptance of a full payoff was fundamentally different from accepting the cure of a default and allowing a troubled debtor-creditor relationship to continue. These findings are not clearly erroneous, and will not be disturbed. I.R.C.P. 52(a).

The district court further found that acceptance of the late payment was a single and isolated act. The court held that acceptance of a late tender on one occasion did not negate the plain terms of the note and deed of trust, both of which provided as follows:

> By accepting payments of any sums secured hereby after its due date, [the bank] does not waive its right either to require prompt payment when due of all other sums so secured or to declare a default for failure to so pay.

We have not been cited—and our research does not reveal—a prior reported decision in which a course of conduct, giving rise to waiver or estoppel, has been held to exist upon evidence of a single occurrence dissimilar from the transaction at issue. Accordingly, we sustain the district court's ruling that no course of conduct was established in this case. *Compare Pacific Finance Corp. v. Ellithorpe*, 134 Or. 601, 289 P. 1058 (1930); *Jones v. Clark*, 418 P.2d 792 (Wyo.1966). We conclude that the bank was entitled to reject the untimely tender.

The judgment of the district court, dismissing the complaint against the bank, is affirmed. Costs to respondent.

WALTERS, C. J., and SWANSTROM, J., concur.