747 P.2d 55

**H & V ENGINEERING, INC., Jack S. Hammond, PE/LS, Frank R. Leibrock, PE/LS, and Koorosh "Danny" Fouladpour, PE/LS, Petitioners–Appellants,**

v.

**IDAHO STATE BOARD OF PROFESSIONAL ENGINEERS AND LAND SURVEYORS, Respondent.**

No. 16442.

Supreme Court of Idaho.

Nov. 4, 1987.

Rehearing Denied Jan. 7, 1988.

---

Wilbur T. Nelson, Boise, for petitioners-appellants.

Paine, Roy & Nielson, Twin Falls, for respondent. Robert C. Paine argued.

BISTLINE, Justice.

Appellants seek review of a district court's order which declined to affirm or reverse a disciplinary order entered by the State Board of Professional Engineers and Land Surveyors (Board). Appellants (engineers) argue that the district court should have reversed the Board on the grounds that its order violated due process because the then applicable regulations proscribing "misconduct" and "gross negligence" failed to adequately warn them as to what conduct would subject them to discipline. We agree and reverse.

I.

The engineers all earned degrees in civil engineering from their respective colleges between 1969 and 1972; each had completed or was actively working on advanced degrees in sanitary engineering, a discipline which includes the science of wastewater treatment. Subsequent to graduation, they joined the engineering firm of Hamilton and Voeller of Pocatello, then owned by C. James Voeller. That firm had contracted to provide engineering services for three major municipal projects involving design and construction of new wastewater treatment facilities in Rupert, Pocatello and Twin Falls. After the contracts were executed, owner Voeller died in November, 1982. The engineers continued with the engineering firm, then incorporated as a professional corporation. They proceeded toward completion of the work undertaken on the wastewater facilities, as well as other wastewater projects in American Falls and Challis.

The engineers concede that difficulties arose in connection with some of the projects. The Board instituted investigatory and adjudicatory hearings on June 10, 1982. The Board's inquiry focused principally on matters such as design, supervision of construction, and administrative matters such as assignment of personnel, handling of documents, and the relationship of the firm with clients and funding agencies. In its Findings of Fact and Conclusions of Law dated March 15, 1985, the Board found numerous flaws and occasions of misfeasance by the engineers in connection with the work on the wastewater treatment projects. The Board concluded that each deficiency constituted "misconduct in the practice of engineering" and that repeated misconduct on the part of each of the engineers constituted "gross negligence." The Board entered disciplinary orders on March 15, 1985, which: (1) indefinitely revoked the engineering licenses of appellants Jack Hammond and Koorosh "Danny" Fouladpour; (2) suspended for two years the engineering license of appellant Frank Leibrock; and (3) denied renewal of corporate certification for appellant H & V Engineering, Inc.

Thereafter, the engineers sought judicial review in district court, contending that the standards used by the Board were unconstitutionally vague. Judge Rowett remanded the case to the Board for additional proceedings, requiring the Board to articulate the specific standards used in imposing discipline. The engineers appealed Judge Rowett's decision to this Court, after which the Board amended its findings. On October 30, 1986, with the Board's amended findings before him, Judge Rowett affirmed the Board's discipline of the engineers.

## II.

A first question is that of the district court's jurisdiction after appeal was taken to this Court from the order of remand. A question of jurisdiction is fundamental; it cannot be ignored when brought to our attention and should be addressed prior to considering the merits of an appeal. *State v. Tinno*, 94 Idaho 759, 497 P.2d 1386 (1972); *State v. Rollins*, 103 Idaho 48, 644 P.2d 370 (Ct.App.1982).

■ Under the provisions of I.A.R. 11(a)(1), "[d]ecisions by the district court dismissing, affirming, or reversing or remanding on appeal are appealable." *Winn v. Winn*, 101 Idaho 270, 271, 611 P.2d 1055, 1056 (1980); *Duff v. Bonner Building Supply, Inc.*, 103 Idaho 432, 649 P.2d 391 (Ct.App.1982), *reversed on other grounds* 105 Idaho 123, 666 P.2d 650 (1983). Hence, the order "remanding an appeal," is thus appealable to this Court as a matter of right.

■ Once a notice of appeal has been perfected the district court is divested of jurisdiction and the proceedings are stayed during the pendency of the appeal. *Dolbeer v. Harten*, 91 Idaho 141, 144, 417 P.2d 407, 410 (1966). There are exceptions to this general rule, and they are specifically enumerated in Rule 13. For example, the district court is empowered to settle the transcript on appeal, rule upon a motion for a new trial, or, rule on any motion to amend *its own* findings of fact or conclusions of law. I.A.R. 13(b)(1–3) (Supp.1986).

Absent from the limited enunciated exceptions to Rule 13 is any provision which authorizes the district court, after remanding the case for further proceedings, to consider and act upon additional Findings of Fact from the Board where, in the interim, appeal of the remand was perfected in this court.

Once the proceedings are stayed by appeal, the district court ordinarily is divested of jurisdiction to act in any manner (with relation to the rights and liabilities of an appellant) except to act in aid of and not inconsistent with the appeal. *Coeur d'Alene Turf Club, Inc. v. Cogswell*, 93 Idaho 324, 329, 461 P.2d 107, 112 (1969) (parenthesis in original).

The Board argues that in regard to the district court's order adopting the Board's Amended Findings of Fact and subsequent affirmation of discipline, equitable considerations should bestow jurisdiction. Specifically, the Board contends that the parties agreed that the entire proceedings below, including the affirmance following the remand, should be decided on appeal. In support of this contention, the Board refers to a copy of a letter sent to the clerk of this court memorializing such an agreement, and argues that because the engineers agreed that the affirmance would be before the Court on appeal, equity precludes them from now raising jurisdictional considerations. We cannot agree.

■ Even if jurisdictional questions are not raised by the parties, we are obligated to address them, when applicable, on our own initiative. *White v. Stiner*, 36 Idaho 129, 209 P. 598 (1922); *Lloyd v. Zollman*, 285 Or. 161, 590 P.2d 222 (1979); *Hayes v. State*, 599 P.2d 569 (Wyo.1979). Further, parties cannot confer jurisdiction upon the court by stipulation, agreement, or estoppel. *Johnson v. Assured Employment, Inc.*, 277 Or. 11, 558 P.2d 1228 (1977); *Hollister Convalescent Hospital, Inc. v. Rico*, 15 Cal.3d 660, 125 Cal.Rptr. 757, 542 P.2d 1349 (1975); 4 C.J.S. *Appeal & Error* § 43 (1981). Consequently, the Board's attempt to confer jurisdiction is of no moment, notwithstanding the parties' agreement.

■ We conclude, therefore, that the district court was without jurisdiction to affirm the disciplinary order imposed by the Board after having initially ordered a remand, from which order the engineers perfected their appeal, and jurisdiction was vested in this Court. As a result, the only substantive issue presented on this appeal properly before us is whether the district court erred in entering the order remanding the case to the Board with specific directions.

### III.

Our review of agency proceedings is limited; the reviewing court cannot "substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." I.C. § 67–5215(g) (Supp.1987). The court is obliged, however, to reverse a decision if substantial rights of an individual have been prejudiced because the administrative findings, inferences, conclusions, or decisions are "in violation of constitutional or statutory provisions." *Id.; Allen v. Lewis–Clark State College*, 105 Idaho 447, 452, 670 P.2d 854, 859 (1983).

The legislature created the Board to "safeguard life, health and property" by ensuring that professional engineers are qualified and properly registered. I.C. § 54–1201. The Board is specifically empowered to suspend or revoke the license of an engineer for "gross negligence" and "misconduct."[1] The engineers contend that the district court's remand was improper because the discipline imposed by the Board for misconduct and gross negligence violates due process since the standards articulating the basis for discipline failed to adequately warn them as to what acts would subject them to discipline.[2]

■ The right to practice a chosen profession is a valuable property right which cannot be deprived unless one is provided with the safeguards of due process. *Schware v. Board of Bar Examiners*, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957) (lawyer); *Tuma v. Board of Nursing*, 100 Idaho 74, 593 P.2d 711 (1979) (nurse); *Ferguson v. Board of Trustees of Bonner County School Dist. No. 82*, 98 Idaho 359, 564 P.2d 971 (1977) (teacher). Thus, the discipline here imposed by the Board triggers due process because the revocation or suspension of an engineering license deprives an engineer of his or her chosen livelihood.

■ The void-for-vagueness doctrine was defined as follows in *Wyckoff v. Board of County Commissioners of Ada County*, 101 Idaho 12, 15, 607 P.2d 1066, 1069 (1980):

[A] statute is unconstitutionally vague when its language does not convey sufficiently definite warnings as to the proscribed conduct, and its language is such that men [or women] of common intelligence must necessarily guess at its meaning.

*See also Keyishian v. Board of Regents*, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967); *State v. Pigge*, 79 Idaho 529, 532, 322 P.2d 703, 705 (1958), *rehearing denied*. The doctrine is equally applicable to statutes prescribing a standard of conduct which, though not subject to criminal sanctions for violations thereof, is subject to regulation by an administrative board or agency. *Tuma, supra*, 100 Idaho at 79, 593 P.2d 711.

The Board is empowered "to adopt and amend all by-laws and rules of procedure, not inconsistent with the constitution and laws of this state, which may be reasonably

---

1. All reference to Title 54, Ch. 12, are to the Code as effective at the time the discipline was imposed, prior to amendment in 1986. The then applicable statute, I.C. § 54–1220 (1979) enumerated the grounds for discipline of engineers. The grounds were limited to:

(a) The practice of any fraud or deceit in obtaining a certificate of registration or certificate of authorization;

(b) *Gross negligence*, incompetency, habitual intemperance, insanity, conviction of a felony, moral turpitude, or *misconduct* in the practice of professional engineering or land surveying as a registered professional engineer or land surveyor. (Emphasis added.)

2. United States Const. Amend. 14, § 1 provides: "[N]or shall any state deprive any person of life, liberty, or property, without due process of law."

necessary for the proper performance of its duties and the administration of the act and the regulation of proceedings before the board." I.C. § 54–1208 (1979). As noted earlier, one of the duties of the Board is to impose discipline by revoking or suspending engineering certificates in appropriate cases. *See* I.C. § 54–1220. The engineers argue that because the grounds for discipline have not been defined by statute nor by the Board itself, those grounds fail to adequately warn them as to what conduct is prohibited. For instance, they challenge the Board's finding that the engineers developed an adversarial relationship with the agencies which reviewed, supervised and funded wastewater treatment projects. The Board concluded in their findings that this adversarial relationship was the result of "poor judgment on the part of the engineers, hence misconduct." In sum, the engineers submit that standards for discipline are unconstitutionally vague because nowhere do any regulations define the grounds for discipline; for example, no regulation defines "poor judgment" as "misconduct." We agree.

■ Fundamental to the disposition of this appeal is our unanimous decision in *Tuma*, 100 Idaho 74, 593 P.2d 711 (1979) *supra*, a precedent cited by neither party. In that case a nurse was suspended on the grounds of "unprofessional conduct" by interfering with the physician-patient relationship when she engaged in conversations with a patient regarding an alternative method of treatment. Tuma, like the engineers, argued she could not "be punished for acts the doing of which at the time done had not been proscribed by the legislative definition, or by any definition of standards by the Board." 100 Idaho at 78, 593 P.2d at 715. There we saw nothing in the statutory definition of "unprofessional conduct" which adequately warned Tuma of the possibility that her license would be suspended if she engaged in conversations with a patient regarding alternative procedures. Hence, we held that the statute," *unaided by board rules and regulations,* [did] not prohibit the conduct with which she was charged." *Id.* at 80, 593 P.2d 711 (emphasis added). Similarly, we find nothing in the statutory definition —nor Board rules and regulations—which warned the engineers that their acts would subject them to discipline. As a result, the grounds upon which the engineers were disciplined by the Board were unconstitutionally vague.

Another parallel between the instant action and *Tuma* is the rationale put forward by the respective Boards to justify the lack of definite standards. In *Tuma* the Board argued that "unprofessional conduct" did not warrant further definition; it was "that which is recognized to be unsafe or improper by the profession itself." The Board of Nursing went on to note that because it was "made up of professionals and experts of the profession regulated, [they were] fit and capable in their own right to determine the standards of the profession from their *personal knowledge* and *experience.*" *Id.* at 81, 593 P.2d 711 (emphasis added). In similar fashion, the Board contends that a "detailed description" of grounds for discipline is unnecessary; the Board submits that discipline based on the "expertise and experience" of the Board is sufficient. Respondent's Brief at 17, 22.

The greatest shortcoming by both the Board of Nursing in *Tuma* and the Board of Engineers in this case is that instead of articulating clear standards of discipline, the Boards appear to prefer that their standards need not be declared, but rather that their "expertise and experience" and "collective knowledge" be applied on an ad hoc basis. This not only fails to warn the professional as to which acts are unlawful, but it renders judicial review superfluous. Without clearly articulated standards as a backdrop against which the court can review discipline, the judicial function is reduced to serving as a rubberstamp for the Board's action. "Such a procedure would be an intolerable state of affairs, and not in compliance with requirements of due process." *Tuma*, 100 Idaho at 81, 593 P.2d 711. *C.f., Workman Family Partnership v. City of Twin Falls*, 104 Idaho 32, 655 P.2d 926 (1982) (zoning commission must make record of proceedings; otherwise, judicial review is ineffectual).

*Tuma* is also analogous in that the Board of Nursing, like the Board of Engineers, failed to "avail[ ] itself of the afforded opportunity to expand upon the legislative definition" of the grounds for discipline. 100 Idaho at 79, 593 P.2d 711. At oral argument counsel for the Board argued that it would be impossible to articulate specific standards of discipline because the field of engineering is too broad and encompasses infinite contingencies which might be grounds for discipline. That same argument could have been urged in *Tuma*, as well. We cannot accept the Board's argument that the promulgation of clear standards is a task too onerous to be undertaken.

Were we to accept such reasoning, we might as well abolish our court rules because instances arise during litigation which are unique, falling into no neat delineated category governed by a particular court rule. However, court rules provide lawyers with invaluable notice, guideposts for litigation which enable the advocate to prepare a case. Similarly, if the Board enunciates standards of discipline, engineers will have notice to guide them and warn them in advance of conduct which may be grounds for discipline. Disciplinary standards cannot be kept secret from the professionals or the courts. In this case, the phantom of unknown standards robbed the engineers of notice as to what conduct was proscribed. As stated in another tribunal: "This Kafkaesque chain of secrecy is not what the Due Process Clause contemplates. *See* F. Kafka, THE TRIAL (1956)." *Ridge v. Police and Firefighters Retirement and Relief Board*, 511 A.2d 418, 425, n. 11 (D.C.1986).

Disciplinary standards in other professions have articulated rules which provide notice of prohibited conduct. One of the findings by the Board stated that the engineers failed to adequately supervise employees, and such a failure constituted "misconduct."[3] The ABA Model Code of Professional Responsibility clearly warns lawyers about the supervision of employees:

A lawyer often delegates tasks to clerks, secretaries, and other lay persons. Such delegation is proper if the lawyer maintains a direct relationship with his client, supervises the delegated work, and has complete professional responsibility for the work product. Model Code of Professional Responsibility E.C.3–6 (1982).

In contrast, the Board of Engineers had promulgated no such rule or guideline.

The Board also found Engineer Fouladpour to be "grossly negligent or incompetent in providing inspection services" at the Rupert Waste Water Treatment Facility project. In a related profession, the rules and regulations for physicians addresses the subject of on-site supervision:

The supervising physician shall, on at least a monthly basis, conduct an on-site visit and personally observe the quality of care provided; however, if exceptional circumstances exist in an individual case, the supervising physician can apply to the Board for a waiver or modification of this requirement. IDAPA 22.D.(2)(a)(iii) Rules and Regulations for Supervising Physicians.

In contrast, the Board of Engineers had no such rule or regulation. Thus it seems that some of the previously unarticulated grounds found by the Board for disciplining engineers in this case have been adequately addressed by other professions in written regulations, thereby giving the professionals notice as to prohibited conduct. We understand that certain issues will be germane to engineering. However, professions can, and do, take into account grounds for discipline unique to that field. For example, it is unlawful for a mortician to use "profane, indecent or obscene language" in the presence of a dead human body. *See* I.C. § 54–1116. Thus, we are unpersuaded by the Board's contention that the field of engineering is so broad in scope that it precludes the promulgation of clear standards of discipline.

---

**3.** We speak only of the Board findings made prior to the appeal to the district court. The amended findings are not properly before us.

We conclude that the district court erred in remanding the case to the Board for further proceedings. The case should have been reversed because the standards upon which the Board disciplined the engineers did not warn them of prohibited conduct. Unwritten standards based solely on the Board's "experience and expertise" unknown to members of the profession and reviewing courts cannot survive due process scrutiny.

*Reversed.* Costs not inclusive of attorney's fees to appellants.

BAKES, J., and WALTERS, J. Pro Tem., concur.

SHEPARD, C.J., dissents without opinion.