968 P.2d 240

**Ann Louise DIAMOND, Plaintiff–Appellant,**

v.

**SANDPOINT TITLE INSURANCE, INC., an Idaho corporation; Michael Parr and Jean Parr, husband and wife; Steven Litzell and Natalie Litzell, husband and wife, Defendants–Respondents,**

**and**

**Mary Irene (Scotty) Loaiza, dba Bonner Escrow Company, Marita Stewart, dba Bonner Escrow Company, and Does 1–10, Defendants.**

No. 23540.

Supreme Court of Idaho,
Coeur d'Alene, September 1998 Term.

Nov. 2, 1998.

Rehearing Denied Dec. 8, 1998.

**146**

Ann Louise Diamond, Loma Linda, California, pro se appellant.

Finney & Finney, Gary A. Finney, Sandpoint, for respondent, Sandpoint Title Company. Gary A. Finney argued.

Verby Law Office, Sandpoint, for respondents Michael and Jean Parr. Steven C. Verby argued.

Lukins & Annis, Richard W. Sweney, Coeur d'Alene, for respondents Steven and Natalie Litzell. Richard W. Sweney argued.

SCHROEDER, Justice.

This is an action by the trustor of a deed of trust to set aside a trustee's sale on the basis that the trustee had wrongfully refused to accept the trustor's offer to cure the default on a note securing the deed of trust. The trustor also asserted a claim of breach of fiduciary duty and negligence against the trustee, a breach of contract claim against the escrow agent, and a claim that the parties who purchased the property at the trustee's sale were not bona fide purchasers and, therefore, not entitled to ownership. The district court granted partial summary judgment in favor of the defendants-respondents. The trustor appealed. Subsequently, the district court entered a final summary judgment.

## I.

## BACKGROUND AND PRIOR PROCEEDINGS

Ann Louise Diamond (Diamond) and her former husband purchased real property in Bonner County from Michael and Jean Parr (the Parrs). The Diamonds gave the Parrs a promissory note in the amount of $120,000 secured by a deed of trust in favor of the trustee, Sandpoint Title Insurance, Inc. (Sandpoint Title), to hold title to the property for the benefit of the Parrs as beneficiaries. The Parrs and the Diamonds also entered into a contract with Bonner Escrow Company, Inc. (Bonner Escrow) to hold the original deed of trust, promissory note and request for full reconveyance. Bonner Escrow was to accept payments, disburse those payments to the Parrs, and maintain a record of the payments and their application to principal and interest.

Subsequently, Diamond and her husband divorced. Diamond acquired all of the interest in the property subject to the deed of trust. She defaulted on the promissory note to the Parrs in 1994. In August 1994, Bonner Escrow mailed Diamond a Notice of Default which was returned undelivered. Diamond was living out-of-state at the time, and Bonner Escrow did not know her whereabouts.

On October 7, 1994, the trustee, Sandpoint Title, recorded a Notice of Default with the Bonner County Recorder. The Notice was signed and dated October 4, 1994, but it was not recorded until October 7, 1994. Diamond mailed a check for $10,800 to Bonner Escrow in October, which was the amount of payments she determined was in default. Bonner Escrow returned the funds to her informing her that the escrow account had been closed and canceled. Thereafter, she received a memorandum dated November 3, 1994, from Sandpoint Title's attorney, the Prohaska law firm (Prohaska), which indicated that the amount needed to cure the default at that time was $21,191.02.

Diamond testified that she obtained funds on or about January 24, 1995, that were sufficient to cure the default, and that she made arrangements with her bank to transfer the funds to the trustee as soon as she obtained the exact amount of the default and the instructions needed to wire the funds. On Friday, January 27, 1995, she contacted Prohaska's office in an attempt to determine the amount owed to cure the default, how to effectuate the cure, and the last available date to cure the default.

Diamond had 115 days from the recording of the Notice of Default to cure the default. I.C. § 45–1506(12). January 27th was the 112th day from the recording of the Notice of Default. She testified that when she called Prohaska's office on January 27, 1995, she explained her situation to the person who answered the telephone and asked for wiring instructions so that she could wire the money. The person informed Diamond that "Liz" was handling the matter and that she would have Liz call her back. The person did not give Diamond any further information. Liz did not return Diamond's call on the 27th.

Diamond further testified that sometime after 5:00 p.m. on the 27th she went to her bank to verify that the funds were available for transfer. According to her, she had "just under seventeen thousand" dollars in her retirement account with the bank and a cashier's check for $10,800 in her purse which she intended to tender to cure the default once she verified the exact default amount and

obtained the necessary wiring instructions from Prohaska.

Diamond called Prohaska's office several times on Monday, January 30, 1995, trying to reach Liz. According to Diamond's deposition, she spoke with Tom Prohaska who told her that "[her] emergency was not their emergency." He would not give her the routing information she requested. Later on January 30th, Liz returned Diamond's calls. Liz told Diamond that the date for cure had expired on January 27, 1995, and that the only amount they would accept was the full balance of the note which was approximately $126,000. Liz told her that the 115 days ran from the time the Parrs signed the document, not the time it was recorded. Therefore, January 27th was the 115th day and it was too late to cure.

Liz misinformed Diamond. Under section 45–1506(12) of the Idaho Code (I.C.), the 115–day time frame began from the date of recording, not the date of signing. January 30, 1995, was the 115th day after the date of recording on October 7, 1994. Believing that the time to cure had expired and that Prohaska would accept nothing less than full payment of the note, Diamond did not ask Liz for wiring instructions and, therefore, never wired the funds.

Diamond made several efforts to obtain alternative financing in order to pay off the Parrs prior to the trustee's sale, but she was unsuccessful. On March 13, 1995, Sandpoint Title offered the property for sale at a trustee's sale. Steven and Natalie Litzell (the Litzells) purchased the property for $242,835.

In her amended complaint Diamond claimed that the Litzells were not good faith purchasers and not entitled to ownership under the trust deeds statutes, title 45, chapter 15 of the Idaho Code. Diamond also claimed that Sandpoint Title, through Prohaska, breached a fiduciary duty to her by refusing to give her the necessary information to cure the default within the 115–day statutory period. She claimed that Sandpoint Title, through Prohaska, had acted negligently. Finally, she alleged that Bonner Escrow had breached its contractual duty when it failed to accept her tender of $10,800. Diamond

did not claim that there were any defects in the notice of sale or the way the sale was conducted.

The Litzells filed a motion for summary judgment, and Sandpoint Title and the Parrs joined in the Litzells' motion. Diamond filed two affidavits in opposition to the defendants' motion for summary judgment.[1] The district court granted partial summary judgment on November 26, 1996, dismissing all claims against the Litzells and the Parrs on the ground that Diamond had "failed to make a valid tender of the amount due under the promissory note secured by the deed of trust." The district court also dismissed Diamond's claims against Sandpoint Title involving the issue of tender.

Diamond filed a Notice of Appeal on January 7, 1997, from the November 26th judgment which had been certified as a final judgment by the district court under Rule 54(b) of the Idaho Rules of Civil Procedure (I.R.C.P.). Thereafter, on April 10, 1997, the district court granted summary judgment in favor of Bonner Escrow, dismissing Diamond's contract claim against them. On July 7, 1997, the district court granted summary judgment in favor of Sandpoint Title, dismissing Diamond's claims of breach of fiduciary duty and negligence by concluding (1) that Prohaska was an independent contractor and not an employee or agent of Sandpoint Title; therefore, the doctrine of respondeat superior did not apply, and (2) that Sandpoint Title committed no acts or omissions of its own that would give rise to liability to Diamond. Diamond never filed a notice of appeal or an amended notice of appeal from the summary judgment dated July 7, 1997, in favor of Sandpoint Title or the summary judgment dated April 10, 1997, in favor of Bonner Escrow. However, this Court granted her request to augment the clerk's record with a copy of both summary judgments.

The issues Diamond raises on appeal are those addressed in the partial summary judgment entered November 26, 1996, and the summary judgment in favor of Sandpoint Title dated July 7, 1997. Diamond does not challenge the district court's dismissal of her contract claim against Bonner Escrow.

## II.

## THE FINAL SUMMARY JUDGMENT ENTERED BY THE DISTRICT COURT JULY 7, 1997, DID NOT RENDER THE PARTIAL SUMMARY JUDGMENT ENTERED NOVEMBER 26, 1996, MOOT BECAUSE THE DISTRICT COURT WAS WITHOUT JURISDICTION TO ENTER THE JULY 7, 1997, SUMMARY JUDGMENT.

■ Sandpoint Title argues that the final summary judgment entered on July 7, 1997, renders Diamond's appeal from the district court's partial summary judgment entered on November 26, 1996, moot and, therefore, the appeal should be dismissed. However, when Diamond filed her Notice of Appeal in January 1997, from the partial summary judgment of November 26, 1996, the district court lost jurisdiction over the case and had no authority to enter the summary judgment of July 7, 1997.

■ The question of jurisdiction is fundamental and cannot be ignored. Even if jurisdictional questions are not raised by the parties, the Court must address them on its own initiative. *H & V Eng'g, Inc. v. Idaho State Bd. of Prof'l Eng'rs & Land Surveyors*, 113 Idaho 646, 648, 747 P.2d 55, 57 (1987). Rule 54(b)(2) of the I.R.C.P. provides that "[i]f a Rule 54(b) Certificate is issued on a partial judgment and an appeal is filed, the trial court shall lose all jurisdiction over the entire action, except as provided in Rule 13 of the Idaho Appellate Rules." There are no exceptions in Rule 13 that are applicable to authorize the district court to enter the final summary judgment of July 7, 1997, after the November 26, 1996, partial summary judgment received a Rule 54(b) certificate and was appealed. *See H & V Eng'g*, 113 Idaho at 648, 747 P.2d at 57 ("Once a notice of appeal has been perfected the district court is divested of jurisdiction and the proceed-

---

1. The Litzells and Diamond each filed a motion to strike certain portions of the affidavits filed by the opposing party, but there is no indication in the record that the district court ever ruled on these motions.

ings are stayed during the pendency of the appeal.").

The district court was without authority to enter the July 7, 1997, judgment, and that judgment is void. Diamond's appeal from the November 26, 1996, judgment is proper and Sandpoint Title's motion to dismiss is denied. The issue properly before this Court is the question of tender/refusal addressed in the November 26, 1996, judgment.

### III.

### STANDARD OF REVIEW

When this Court reviews the district court's ruling on a motion for summary judgment, it employs the same standard properly employed by the district court when originally ruling on the motion. *Smith v. Meridian Joint Sch. Dist. No. 2*, 128 Idaho 714, 718, 918 P.2d 583, 587 (1996); *City of Chubbuck v. City of Pocatello*, 127 Idaho 198, 200, 899 P.2d 411, 413 (1995). Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. I.R.C.P. 56(c); *Mutual of Enumclaw v. Box*, 127 Idaho 851, 852, 908 P.2d 153, 154 (1995). Both this Court and the district court shall liberally construe the record in favor of the party opposing the motion for summary judgment, drawing all reasonable inferences and conclusions supported by the record in favor of that party. *City of Chubbuck*, 127 Idaho at 200, 899 P.2d at 413.

### IV.

### THERE IS AN ISSUE OF MATERIAL FACT ON THE QUESTION OF WHETHER PHYSICAL TENDER OF THE AMOUNT DUE WAS EXCUSED BY A REFUSAL ON THE PART OF SANDPOINT TITLE.

The Litzells argue that Diamond did not make a valid tender, and the Parrs make the identical argument. Sandpoint Title relies solely upon the argument that Diamond's appeal is moot as a result of the district court's entry of final summary judgment on July 7, 1997. The argument fails since the district court was without jurisdiction to en-

ter the final summary judgment. However, the determination by the district court that Diamond did not make a valid tender resulted in dismissal of claims by Diamond against each of the respondents and must be addressed by the Court despite Sandpoint Title's failure to argue the issue.

The Litzells maintain that there is no evidence that the $10,800 cashier's check Diamond had was deposited and available for wire transfer. They also maintain that, according to the bank documents produced, the $15,521.84 Diamond had in her checking account was not available for wire transfer until after the cure date for the default. However, the affidavit of a bank employee stated that Diamond had a balance of $16,907.66 in the checking account. Diamond testified that the cashier's check was available for transfer. The district judge concluded "there [was] at least a genuine issue of material fact as to whether [Diamond] had the present ability [to pay] so the Court cannot ground its summary judgment on the fact that she had no present ability." Further, the district judge stated that he thought the facts showed Diamond did have the present ability to pay but that she did not make the tender and "therefore she loses." There is, therefore, a genuine issue of material fact on the question of whether Diamond had the ability to pay the amount due on the default within the time allowed for cure. The question remains as to whether Diamond made a tender of the amount due, and, if not, whether the failure was excused by conduct of Sandpoint Title acting through its attorney.

This Court has defined a valid tender as follows:

"A mere offer to pay does not constitute a valid tender, the law requires that the tenderer have the money present and ready, and produce and actually offer it to the other party. Tender implies the physical act of offering the money or thing to be tendered, but this cannot rest in implication alone. The law requires an *actual, present, physical offer;* it is not satisfied by a mere spoken offer to pay, which, although indicative of present possession of the money and intention to produce it, is

unaccompanied by any visible manifestation of intention to make the offer good." *Pollard Oil Co. v. Christensen,* 103 Idaho 110, 116, 645 P.2d 344, 350 (1982) (emphasis , added) (quoting 74 AM.JUR.2D *Tender* § 7, at 549–50 (1974)). Relying on this definition later quoted in *Allied Invs., Inc. v. Dunn,* 104 Idaho 764, 765, 663 P.2d 300, 301 (1983), the district court ruled that a tender requires a physical delivery of money, and Diamond did not make a valid tender.

■ This conclusion is supported by Idaho case law, in addition to *Pollard Oil Co. See Taylor v. Browning,* 129 Idaho 483, 488, 927 P.2d 873, 878 (1996) (holding no tender after noting that, although there may have been a spoken offer of tender, the check was never physically handed to the creditor); *Federal Land Bank of Spokane v. Parsons,* 116 Idaho 545, 550, 777 P.2d 1218, 1223 (Ct.App.1989) ("[A] valid tender requires that a debtor produce money and place it in the control of the creditor."); *Owens v. Idaho First Nat'l Bank,* 103 Idaho 465, 467, 649 P.2d 1221, 1223 (Ct.App.1982) (where agent, at most, made spoken offer to pay, such did not constitute a valid tender). Diamond did not physically deliver the money to Prohaska; therefore, she did not make a valid tender. The question remains as to whether Prohaska's conduct, acting for Sandpoint Title, constituted a refusal that excused physical delivery of the money.

" 'Actual production of money or property is not necessary, if the party to whom it is offered refuses to receive it, especially in view of the rule ... that actual tender is waived by such refusal.' " *Taylor,* 129 Idaho at 488, 927 P.2d at 878 (quoting 74 AM.JUR.2D *Tender* § 7 (1974)). In other words, "[a] tender otherwise indispensable is no longer required when its futility is shown." *Owens,* 103 Idaho at 467, 649 P.2d at 1223.

Diamond claims that Prohaska's failure to give her wiring instructions and misinforming her about the amount due amounted to a refusal which excused her duty to make a tender. The district court concluded that Prohaska's failure to give wiring instructions was not a refusal. It also relied on *Allied Investments* when it concluded that Prohaska's conduct of giving erroneous information

that the entire balance was due, when in fact it was not, did not amount to a refusal.

The facts in *Allied Investments* are similar to the facts in this case. In *Allied* the debtor called the creditors on the 115th day and "stated that he was in a position to tender payment subject to knowing the amount of attorney fees." 104 Idaho at 764, 663 P.2d at 300. The creditors told the debtor they were accelerating the note and wanted payment of the entire balance. The debtor did not have the entire balance to pay on the 115th day, so he contacted an attorney. The debtor's attorney called the creditors and informed them that, according to I.C. § 45–1506, the debtor had 115 days to cure the default and that on the 115th day the debtor only had to pay the arrearage. The creditors agreed to extend the date to cure the default, but the debtor failed to cure within that time. Thereafter, the debtor filed suit, arguing that the creditors' statement that the entire balance was due, when in fact it was not, amounted to a refusal. Consequently, the debtor claimed he was not required to make a tender. This Court disagreed, holding: "The [creditors'] statement that the entire balance was due is not sufficient to constitute a refusal, thus excusing the [debtor] from making a valid tender." *Id.* at 765, 663 P.2d at 301.

Subsequent to the district court's ruling in the present case, this Court decided *Taylor.* In *Taylor,* the debtor went to the creditor's office with a check. The creditor's office manager refused to accept the check because she felt the debtor owed more money than the amount of the check. This Court noted that "[a]lthough there may have been a spoken offer of tender, the record indicates that the check was never physically handed to [the creditor]." 129 Idaho at 488, 927 P.2d at 878. The Court determined that since the creditor "refused to take the check, and clearly indicated that he felt he was owed more money than the purchase price, and would not have taken the check even if it was offered to him," such conduct amounted to a refusal which excused the debtor's obligation to make a physical tender of the check. *Id.*

The question presented is whether this case falls closer to *Allied* or *Taylor.* There

are important differences which distinguish this case from *Allied*. The court in *Allied* noted:

> There is no evidence in the record that there was an actual production or delivery of the money. We agree with the trial court that if the plaintiff had produced the money and the defendant had refused to accept this amount, an injunction would have been in order. However, the record indicates that the plaintiff's offer was not coupled with a present ability to do the act.

104 Idaho at 765, 663 P.2d at 301. The *Allied* court's observation that the creditors' statement that the entire balance was due was not sufficient to constitute a refusal must be read in light of the determination that the debtor did not have the present ability to make payment. Essentially, where there was no evidence that the debtor had the present ability to pay the amount to cure the default, the creditors' misstatement regarding the amount due was irrelevant and, therefore, did not constitute a refusal.

█ Unlike *Allied*, this Court must assume, for purposes of the motions for summary judgment, that Diamond had the present ability to cure the default prior to the date for cure. Prohaska's refusal to give Diamond wiring instructions and misinforming Diamond about the amount due directly impaired her ability to cure. In *Allied* there is no indication that the debtor was impaired in his ability to pay the amount to cure the default by conduct of the creditors. The creditors in *Allied* acknowledged their error in informing the debtor that the entire amount was due. They extended the time to cure the default when the debtor's attorney contacted them and pointed out that the debtor was only required to pay the arrearage. The initial misinformation as to the entire amount being due in *Allied* was irrelevant. The same cannot be said about Prohaska's conduct in this case. Prohaska's misstatements and refusal to give wiring instructions directly impaired Diamond's ability to cure.

█ Another important distinction between *Allied* and this case centers around the relationship of the parties. In *Allied* the debtor and creditors were contracting parties who dealt at arms length. In this case, Sandpoint Title was not the creditor. It was the trustee under a deed of trust. It owed duties to both the Parrs and Diamond. Idaho has not addressed the nature of the duties owed by a trustee, but it is clear that the trustee has an obligation to give accurate information to the trustor and not to act in a manner which defeats the trustor's rights. It is not clear that Sandpoint Title, acting through its attorney Prohaska, did that when Prohaska's office gave incorrect information about the amount due and Prohaska refused to give wiring information for payment of the amount due.

In sum, this case is distinguishable from *Allied*. The misrepresentation as to the amount due by Prohaska was relevant unlike in *Allied*. There is evidence that Sandpoint Title, through Prohaska, impaired Diamond's ability to transmit the funds. Sandpoint Title owed a duty to Diamond to act reasonably to facilitate cure of the default. This case should be analyzed in light of this Court's decision in *Taylor* to determine if there was a refusal by Sandpoint Title that excused Diamond from making a physical tender of the amount due to cure the default.

## V.

## CONCLUSION

The decision of the district court granting the partial summary judgment is vacated and the case is remanded for determination of whether Diamond had the ability to make payment of the cure amount when due, and, if so, if the conduct of Sandpoint Title, acting through Prohaska, constituted a refusal that excused physical tender. If physical tender was excused, the district court must then determine if the Litzells were bona fide purchasers at the foreclosure sale. The award of attorney fees to the respondents based on I.C. § 12–121 is vacated. The issues addressed by the district court in its final summary judgment dated July 7, 1997, are not addressed by this Court because the district court was without jurisdiction to make that

decision. Diamond is allowed costs on appeal. No attorney fees are allowed.

TROUT, C.J., and JOHNSON, SILAK and WALTERS, JJ., concur.