726 F.2d 149
 38 UCC Rep.Serv. 853, 14 Fed. R. Evid. Serv. 1865
 The COUNTY OF HENNEPIN, a body politic and corporate in the
State of Minnesota, Appellant Cross-Appellee,
and
Alpana Aluminum Products, Inc. and Midwest Industries, Inc.,
a joint venture, Appellee Cross-Appellant,
v.
AFG INDUSTRIES, INC., Appellee Cross-Appellant.
 Nos. 82-1663, 82-1674 and 82-1682.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 11, 1983.
Decided Feb. 15, 1984.
 
 1
 Lang, Pauly & Gregerson, Ltd., Roger A. Pauly, Richard F. Rosow, Minneapolis, Minn., for Alpana Aluminum Products, Inc., and Midwest Industries, Inc., a joint venture and The American Insurance Company.
 
 
 2
 Thomas L. Johnson, Hennepin County Atty., David E. Mikkelson, Asst. County Atty., Popham, Haik, Schnobrich, Kaufman & Doty, Ltd., Wayne G. Popham, Clifford M. Greene, Larry D. Espel, Minneapolis, Minn., for County of Hennepin.
 
 
 3
 Oppenheimer, Wolff, Foster, Shepard & Donnelly, St. Paul, Minn., for AFG Industries, Inc.
 
 
 4
 Before ROSS and FAGG, Circuit Judges, and BEAM,* District Judge.
 
 
 5
 BEAM, District Judge.
 
 
 6
 This appeal involves claims of fraud, breach of contract, and breach of warranty against AFG Industries, Inc. [AFG], a manufacturer of insulated glass windows, for units installed in the Hennepin County Government Center located in Minneapolis, Minnesota.[1] The County of Hennepin, Minnesota [sometimes Hennepin], the owner of the building, also cross-claimed against the contractor, a joint venture composed of Alpana Aluminum Products, Inc. and Midwest Industries, Inc. [Alpana], for failure to complete the job as planned. The jury found AFG's window units defective and awarded the County $996,200.00. The contractor was absolved of liability for the defective glass. Hennepin, Alpana and AFG appealed, properly predicating the jurisdiction of this Court upon 28 U.S.C. Sec. 1291. We affirm.
 
 Facts
 
 7
 In 1971, Hennepin solicited bids for construction of a Government Center to be located in downtown Minneapolis. The building consists of two twenty-four story office towers joined into a single structure by insulated glass curtainwalls. Alpana was the low-bidder. The insulated glass units in the curtainwalls were to be supplied by AFG, a glass manufacturer.
 
 
 8
 The architects for Hennepin spoke directly to representatives of AFG concerning the unique shape and color of the glass to be used in the curtainwall. AFG assured the architects that the glass could be manufactured and installed without risk of defect due to the unique design and composition of the glass.
 
 
 9
 From January 9 to March 20 of 1973, AFG manufactured the window units and shipped them to the construction site. Alpana began glazing[2] the glass units on July 12. Before installation of the glazed windows commenced in September of 1973, AFG was informed that some of its glass, already installed in buildings throughout the country, had developed "spacer bowing" that impaired the opacity of the windows. On August 20, 1973, AFG formed a task force to study the problem of spacer bowing. Shortly thereafter, AFG's windows were installed into the Hennepin County Government Center by Alpana.
 
 
 10
 The glass units consist of two pieces of glass separated by a hollow aluminum bar. The bar, called a "spacer bar," is positioned along the perimeter of the unit between the two sheets of tempered glass. This bar creates an air space between the two sheets of glass. The glass unit is held together by a metal band or clip.
 
 
 11
 At some undetermined time after the glass units were glazed into frames and installed into the curtainwall by Alpana, they, too, developed spacer bowing. The spacer bars became warped, and the hermetic seal between the sheets of glass was broken. Air and moisture seeped into the insulated glass units causing rust and obscuring vision. The bowed bars caused a black film of butyl sealant to spread across the sightline of the glass.
 
 
 12
 On June 20, 1974, a storm hit Minneapolis with great force. Wind, rain and hail caused damage to the Government Center. On June 22, inspectors assessing the damage first discovered that some of the glass units had bowed. AFG was consulted about the condition of the glass. AFG opined that the spacer bowing had been caused by the wind.
 
 
 13
 Hennepin ordered replacement glass for the damaged units from AFG. These units also developed spacer bowing. The architects of the Government Center then met. They formally rejected the AFG units as defective and ordered replacement of all units in the curtainwall. AFG maintained that the windows were not defective but had been damaged by the storm. AFG refused to replace the glass units.
 
 
 14
 Aetna, the builder's risk insurer, contended the glass was defective. Hennepin and Alpana then initiated this suit against Aetna and AFG to determine the cause of the damage. The County subsequently filed a cross-claim against Alpana seeking recovery under the construction contract for damages not recovered from AFG.
 
 
 15
 Before trial AFG moved for an order in limine to prevent Hennepin from introducing evidence of spacer bowing on buildings other than the Government Center. They also sought to suppress evidence of the existence and activities of their task force on the problem of spacer bowing under Fed.R.Evid. 407. The trial judge granted the motion, finding that AFG's duty to disclose material defects in the glass ended upon delivery of the units.
 
 
 16
 At a pretrial conference, counsel for Aetna offered to settle for $508,295.00. $82,000.00 of that figure was for storm damage unrelated to the curtainwall. The County accepted the offer and Aetna was dismissed from the suit. The trial judge allowed AFG to introduce evidence of this settlement as proof that Hennepin was alleging that both the storm and AFG were responsible for the defective glass.
 
 
 17
 The jury returned a special verdict which found for Hennepin on express warranty and warranty of fitness for a particular purpose claims but not on warranty of merchantability or fraud. The jury awarded $996,200.00 for replacement of the window units. The Court, based on the jury's findings of fact, ruled that Hennepin could not recover from Alpana because the costs of replacing the windows were not reasonably foreseeable at the time of contracting. The Court also disregarded the jury's findings with regard to express warranty, finding as a matter of law that they had been effectively disclaimed.
 
 
 18
 On appeal Hennepin alleges that the trial judge committed reversible error by admitting evidence of the Aetna claim and settlement, disallowing evidence on the issue of fraud, and instructing the jury in such a way as to prejudice the County's ability to be fully compensated by the damages awarded. Hennepin also contends that inconsistencies in the jury verdict require that a new trial be ordered.
 
 Discussion
 I.
 
 19
 In their first complaint Hennepin County alleged that the wind caused at least some of the spacer bowing. AFG exhibit 329, entitled "Separate Claims vs. Aetna," was an itemized list prepared by the County and presented to Aetna for $425,434.92 worth of damages.[3] It listed some items identical to those being claimed from AFG.
 
 
 20
 Counsel for the County denied at trial that the County had claimed any of the items asserted as damages against AFG from Aetna as storm damage. Counsel, out of the presence of the jury, insisted that they had received a windfall in the amount of $425,000.00 for an $83,000.00 claim for storm damage unrelated to the curtainwall windows.[4] Two witnesses for the County later testified to the same effect in the presence of the jury. AFG then introduced evidence of the claims and the subsequent settlement with Aetna to impeach the veracity of these assertions. The jury was instructed not to offset plaintiff's damages by any amounts received from Aetna.
 
 
 21
 Hennepin argues that admission of evidence of the Aetna settlement was prejudicial because the jury reduced its award by the amount of settlement. Hennepin argues that admission was improper under both the collateral source rule and Fed.R.Evid. 408.
 
 
 22
 The County contends that the Aetna settlement constitutes a collateral source remuneration the payment of which should not have been disclosed to the jury. We find the collateral source rule inapplicable in this case.
 
 
 23
 Rule 408 states that while evidence of settlement is not admissible to prove liability, "This rule does not require exclusion when the evidence is offered for another purpose, such as proving the bias or prejudice of a witness ...." The rule codifies a trend in case law that permits evidence of a settlement to impeach. Reichenbach v. Smith, 528 F.2d 1072, 1075 (5th Cir.1976); see 161 A.L.R. 395 (cases cited); Advisory Committee Notes to Rule 408; McCormick, Evidence Sec. 274 at 665 (2d Ed.1972).
 
 
 24
 Hennepin further argues that statements of its claims contained in its pleadings against Aetna were inadmissible, citing to Garman v. Griffin, 666 F.2d 1156 (8th Cir.1981). The County's reliance on this case is misplaced. Garman was a wrongful death action brought against a driver on behalf of an 11-year-old boy who was killed while alighting from his school bus. The Court held that where a statement in a pleading involves no conduct of the parties in Court, but instead merely the conduct of a dismissed third party, the admission of the statement can be prejudicial. The allegations introduced by AFG relate to the County's strategy on causation and not to the conduct of Aetna. Indeed, in Garman, the Court properly observed that where a party has made a statement in a pleading about his own conduct which is at variance with his position in the matter being litigated, the evidence should be admitted. Id. at 1158-59.
 
 II.
 
 25
 Hennepin alleges that AFG became aware, before installation of the glass into the curtainwall, that much of its glass, installed in buildings throughout the country, was defective. Discovery revealed that AFG was aware of spacer bowing in some 48 buildings and appointed a special task force in the summer of 1973 to investigate the problem. Changes in the design of the glass were implemented. The County sought admission of this evidence to prove that fraudulent misrepresentations had been made by AFG.
 
 
 26
 Fed.R.Evid. 407 provides, in part, that "[w]hen, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event." The trial court opined that evidence of the task force and design changes would have been offered to show negligent or culpable conduct on the part of AFG.
 
 
 27
 Hennepin insists that the evidence was admissible to show that AFG knew the glass was defective, knew why the spacer bowing occurred, and concealed this knowledge from the County. The County urges that this failure to warn of the defects constitutes fraud. This argument appears to move against a purpose of the rule. To the contrary, the better-reasoned cases tend to prohibit use of evidence that involves an inference as to consciousness of fault on the part of the repairer. See, e.g., Columbia and Puget Sound R.R. v. Hawthorne, 144 U.S. 202, 206-08, 12 S.Ct. 591, 592-93, 36 L.Ed. 405 (1892); Northwest Airlines v. Glenn L. Martin Co., 224 F.2d 120, 130 (6th Cir.1955); Limbeck v. Interstate Power Co., 69 F.2d 249 (8th Cir.1934); Annot., 65 A.L.R.2d 932.
 
 
 28
 Furthermore, the Restatement (Second) of Torts Sec. 551 indicates that the duty to disclose expires when the transaction has been "consummated." Id. at Sec. 551(2). See also U.S. Fidelity and Guaranty Co. v. Black, 412 Mich. 99, 313 N.W.2d 77, 89 (1981).[5] Consummation may be equated with substantial performance in the contract context. See Strand v. Librascope, Inc., 197 F.Supp. 743, 754 (E.D.Mich.1961). On the current record, the trial judge concluded that the transaction was consummated on March 20, 1973, when most of the windows had been manufactured and shipped to the construction site. In finding the evidence inadmissible, the trial judge acted well within the proper confines of judicial discretion and the law.[6]
 
 
 29
 Additionally, the transcript of the trial suggests that much of the evidence excluded under the pretrial order was received into evidence at the trial. The record is replete with instances where the County alleged fraud against AFG and produced documents to this effect on a large screen in the presence of the jury. Any indicia of error was thus harmless. See Woelfle v. Conn. Mutual Life Insur. Co., 103 F.2d 417, 419 (8th Cir.1939). The County contends that because they were not allowed to refer to this evidence in their opening statement, their fundamental right to a fair trial has been violated. We find that the County had ample opportunity to impress upon the jury the importance of this evidence at trial and in closing argument, and that prejudicial error was not committed in this regard.
 
 III.
 
 30
 We now turn our attention to the question whether the trial judge erred by finding that AFG effectively disclaimed its express warranties. The special verdict form shows that the jury would have awarded the same amount of damages under the express warranty claim as it did award under the implied warranty claim.[7] Accordingly, no prejudice occurred to Hennepin by way of the trial court's determination that express warranties other than the Tru-Therm warranty were disclaimed.
 
 IV.
 
 31
 Hennepin asserts that certain evidentiary rulings, relevant to the measure of damages, constitute reversible error. We have examined each of appellant's contentions and find no error. We find need to discuss but one of the allegations specifically.
 
 
 32
 The County claims that the trial court erred in refusing to let their expert on the issue of punitive damages testify. The jury found no fraud of any kind. Since fraud was the only cause of action in the case which could have supported an award for punitive damages, the Court's ruling on this evidence and the dismissal of the punitive damage claim were not error.
 
 V.
 
 33
 Hennepin argues that the damages awarded are inadequate because (1) special circumstances in this case justify a measure of damages under the Uniform Commercial Code which would yield a sum greater than the difference in value between goods as warranted and goods as actually delivered and (2) replacement costs for the glass units were foreseeable damages at the time of contracting and are, therefore, recoverable from Alpana.
 
 
 34
 Minnesota Statute Sec. 336.2-714(2) provides that the difference in value between goods as warranted and goods as actually delivered is the general measure of damages for breach of warranty cases, "unless special circumstances show proximate damages of a different amount." Id. The County argues that specific circumstances in this case are: that the high wall construction was unique; that the aesthetic effect of the walls was important and that AFG extended warranties of fitness for a particular purpose. The County claims that such special circumstances justified a measure of direct damages which included all replacement costs, inspection and testing costs.
 
 
 35
 AFG asserts that the jury answered special verdict form questions which took into consideration all of these factors in the computation of consequential and incidental damages and thus, there was no prejudice to the County. The arguments asserted by AFG are supported by the record[8] and the trial court should be affirmed.
 
 
 36
 Alpana was absolved of liability. Therefore, discussions of damages attributable to that entity are unnecessary.
 
 VI.
 
 37
 Hennepin maintains that the jury verdict was inconsistent and that, therefore, a new trial is warranted under principles enunciated in Wright v. Kroeger, 422 F.2d 176 (5th Cir.1970) (special interrogatories inconsistent with general verdict); U.S. Fidelity & Guarantee Co. v. Brian, 337 F.2d 881 (5th Cir.1964), order amended, 339 F.2d 602, cert. denied, 381 U.S. 913, 85 S.Ct. 1537, 14 L.Ed.2d 434 (1965) (inconsistent findings unsupported by evidence); and Missouri Pacific Co. v. Salazar, 254 F.2d 847 (5th Cir.1958) (inconsistent answers). The County maintains that the jury verdict was fatally inconsistent because the jury found a breach of the implied warranty of fitness for a particular purpose but found no breach of warranty of merchantability.[9]
 
 
 38
 The verdict in the present case is neither irreconcilable nor egregiously inconsistent. A product may be generally merchantable but not fit for the particular purpose asserted. See White & Summers, Handbook of the Law Under the Uniform Commercial Code Sec. 9-9 at 358 (2d ed. 1980); see also Schenck v. Pelkey, 176 Conn. 245, 405 A.2d 665 (1978). In any event, the measure of damages is the same under breach of both or either warranty. There is, therefore, no prejudice shown by Hennepin.
 
 
 39
 In accordance with the foregoing, the judgment of the trial court is affirmed.
 
 
 40
 FAGG, Circuit Judge, concurs in the result.
 
 
 
 *
 C. Arlen Beam, United States District Judge for the District of Nebraska, sitting by designation
 
 
 [1]
 Appeal taken from the United States District Court for the District of Minnesota Fourth Division, the Honorable Donald D. Alsop presiding
 
 
 [2]
 Glazing is a process by which glass panels are fixed into window frames with fasteners and a sealing compound
 
 
 [3]
 The County also asserted an $82,859.65 claim against Aetna for skylight replacement cost and storm clean-up. When added to the itemized damages mentioned above, the exact amount of settlement, $508,294.57, is revealed
 
 
 [4]
 Mr. Popham: No. Your Honor. We made no claim from Aetna for items other than the $82,000
 The Court: Other than the $82,000 skylight replacement?
 Mr. Popham: I can't from memory--
 The Court: That is the skylight replacement, $82,000.
 Mr. Popham: I think more than that, that would maybe be the largest item.
 The Court: You are saying that is the only claim you made to Aetna for storm damage.
 Mr. Popham: Those are the items we specifically made claim on against the Aetna, yes, Your Honor.
 The Court: You are telling me for an $82,859.65 item they paid you $508,000?
 Mr. Popham: That is correct, Your Honor.
 The Court: Are you serious on that?
 Mr. Popham: Why would the court question that?
 The Court: Because I have an itemized statement for $508,294.57 which was the claim of the plaintiff Hennepin County in this Court in which it told this Court and told Aetna that there was the totality of its damages under the Aetna insurance policy.
 The Court: Are you telling me, Mr. Popham, that you have a claim against Aetna in this lawsuit of $82,859.65 and no more, and accepted on behalf of the county from the Aetna a check of $508,294.57? Is that what you are telling me?
 Mr. Popham: I believe that was the substance of it, Your Honor.
 The Court: I find that very difficult to believe.
 
 
 [5]
 Section 551 of the Restatement (Second) of Torts is the appropriate standard to apply in Minnesota. See Target Stores, Inc. v. Twin Plaza Co., 277 Minn. 481, 153 N.W.2d 832 (1967)
 
 
 [6]
 While the general exclusionary rule for subsequent remedial measures has been long established, it has seldom resulted in mistrial or reversals. See generally Weinstein on Evidence Sec. 407(06) at 407-26 and following. Cases finding erroneous inadmission of evidence not prejudicial include S.S. Kresge Co. v. McCallion, 58 F.2d 931, 934-37 (8th Cir.1932)
 
 
 [7]
 See the answers given by the jury to questions 24 and 36 of the special verdict form
 
 
 [8]
 See answers 23, 24, 28, 29, 35 and 36 of the special verdict form
 
 
 [9]
 The test to be applied in determining whether the answers can be reconciled is "whether the answers can be reconciled in any reasonable manner consistent with the evidence and its fair inferences." Reese v. Henke, 277 Minn. 151, 152 N.W.2d 63, 66 (1967) (emphasis supplied)