753 P.2d 1253

Howard **DAVIDSON**, d/b/a **D & E
Construction**, Plaintiff–Respondent,

v.

**BECO CORPORATION**, Beco Construc-
tion Company, Inc., Doyle Beck and
Elizabeth Beck, husband and wife, De-
fendants–Appellants.

No. 16922.

Supreme Court of Idaho.

Dec. 10, 1987.

Fuller & Carr, Mark R. Fuller (argued),
Idaho Falls, for defendants-appellants.

Holden, Kidwell, Hahn & Crapo, James
D. Holman (argued), Idaho Falls, for plain-
tiff-respondent.

DONALDSON, Justice.[*]

Today we address whether, and under
what conditions, a trial judge may admit
statements contained in settlement negotia-
tions to be used to impeach contrary testi-
mony given at trial. We hold the state-
ments may be admitted by a trial judge,
but only after deciding their probative val-
ue outweighs the resulting prejudicial ef-
fect.

This case comes to us on a petition for
review from our Court of Appeals. In a
reported decision, *Davidson v. Beco Corp.*,
112 Idaho 560, 733 P.2d 781 (Ct.App.1986),
the appellate court addressed a number of
issues: (1) whether a party needs to renew

[*] DONALDSON, J., sat and participated fully in the decision and opinion prior to his death.

an objection at trial after making the proper objection through a motion in limine; (2) whether a statement contained in a settlement offer may be used to impeach a party who gives contrary testimony at trial; (3) whether the facts of this case warrant the imposition of personal liability for a corporate debt; and (4) whether attorney fees would be awarded. Today, our opinion focuses only on issue number two. Accordingly, the Court of Appeals' rulings with respect to the other three issues stand as set forth in its opinion. At trial, Howard Davidson attempted to offer a statement made in settlement negotiations by Doyle Beck, Beco Corporation's President, for the purpose of impeaching Beck's in court testimony. Over Beco's objection, the trial court allowed the impeachment use of the settlement statement. The Court of Appeals held the statement should not have been admitted because "the risk of unfair prejudice was substantial and manifest," *Id.* at 567, 733 P.2d at 788, but ruled that the trial court error was harmless. I.R.C. P. 61. *Id.* at 568, 733 P.2d at 789. Because we hold the trial court correctly allowed the use of the statement for impeachment purposes, we do not need to address the harmless error issue.

Davidson, d/b/a D & E Construction performed trucking services for Beco Corp. on two construction projects, and submitted a statement in the amount of $10,712.00. Beco made no payment of principal or interest.

Subsequently, Davidson went to Beco's offices and spoke with Beck in an attempt to collect the debt. Beck disputed the $10,712 bill, but agreed to compromise the amount at $9,740. As part of the compromise, Beck gave Davidson $1,000 and the parties agreed to a plan for payment of the balance. However, the parties' memories diverge as to the payment of the remaining $8,740. According to Howard Davidson, Doyle Beck agreed to pay the balance in monthly installments of $1,000 plus 14% interest. According to Doyle Beck, Howard Davidson agreed to take a John Deere 301 tractor in satisfaction of the outstanding balance. Davidson never took possession of the tractor and Beco never made any monthly payments.

Davidson eventually brought suit against Beco for the collection of the debt. After the filing of the law suit, Beco's attorney sent Davidson's attorney a letter in hopes of resolving the dispute through settlement. Among other things, the letter acknowledged that Davidson had performed services for Beco and was entitled to be paid. The letter repeated an offer previously made to Davidson to compromise the account by transfer of the tractor belonging to the corporation. The letter also stated that "a similar offer was made [to Davidson] some time ago, but was refused." The attempt at settlement was unsuccessful, so the lawsuit proceeded to trial.

Beco filed an answer to Davidson's complaint alleging the defense of accord and satisfaction. At trial, Doyle Beck testified that during the meeting with Howard Davidson, he agreed that Beco Corp. owed Davidson for the hauling services and paid him $1,000. Beck further testified that Davidson had agreed to accept the tractor in full satisfaction of the debt, have it appraised, and if its value exceeded the debt, Davidson would pay the difference to Beco. This testimony is contrary to the statement in the settlement letter that the offer had been refused.

Davidson's attorney attempted to impeach Beck's testimony by offering the statement contained in the settlement letter that a previous offer had been made but was rejected by Davidson. Beco objected to the use of the letter arguing it is a settlement letter containing "statements made in compromise negotiations" and thereby inadmissible under I.R.E. 408.[1]

---

**1.** The objection was actually made through a motion in limine prior to trial. At that time, the trial judge correctly ruled the letter cannot be admitted as an exhibit by Davidson during his case-in-chief, but denied the motion so far as cross-examination was concerned. The objec-

The trial judge denied the motion. The jury later returned a verdict for Davidson, and Beco appealed.

The Court of Appeals, in its opinion, looked to the requirements of Rule 408,[2] which disallow the admission of evidence contained in settlement negotiations when offered to prove the validity or the amount of a claim. *Davidson, supra* at 112 Idaho at 565, 733 P.2d at 786. The Court held that the rule did not prohibit the use of prior inconsistent statements made during settlement negotiations for impeachment purposes, *id.,* at 566, 733 P.2d at 787, but limited use of these prior inconsistent statements to situations where their admittance would "strongly suggest[ ] that a witness is perjuring himself at trial or ... [where] unfair prejudice is likely to be insubstantial." *Id.*

The Court applied this rule to the inconsistent statements contained in Beco's letter of settlement offer, and held that "although the letter casts some doubt on the veracity of Beck's testimony, it did not rise to the level of strongly suggesting perjury ... [and] the risk of unfair prejudice was substantial and manifest." *Id.* at 567, 733 P.2d 788. Thus, the Court of Appeals concluded the trial court should not have allowed the use of the letter in cross-examination, but relying on our analysis in *Soria v. Sierra Pacific Airlines, Inc.,* 111 Idaho 594, 726 P.2d 706 (1986), held that the error was harmless under I.R.C.P. 61. *Id.* 733 P.2d at 789.

■ We first consider whether statements made in the course of settlement negotiations may be admitted to impeach the testimony of a witness at trial. We have little difficulty holding that this is a proper use. Almost all courts who have considered the issue have ruled in favor of admissibility. *See El Paso Electric Company v. Real Estate Hart, Inc.,* 98 N.M. 570, 651 P.2d 105 (App.1982), *cert. denied,* 98 N.M. 590, 651 P.2d 636 (1982); *American Family Life Assurance Company v. Teasdale,* 733 F.2d 559 (8th Cir.1984); *County of Hennepin v. A.F.G. Industries, Inc.,* 726 F.2d 149 (8th Cir.1984); and *Missouri Pacific Railway Company v. Arkansas Sheriff's Boys' Ranch,* 280 Ark. 53, 655 S.W.2d 389 (1983).

In a similar context we have ruled that Rule 408 does not require the exclusion of evidence relating to compromises or offers to compromise when the evidence being introduced is used to show bias or prejudice. *See Soria v. Sierra Pacific Airlines, supra,* 111 Idaho at 605, 726 P.2d at 717. We see little difference when the inconsistent statement is used for impeachment purposes. The last sentence of the rule states: "[T]his rule does not require exclusion if the evidence is offered for another purpose, *such as* proving, bias or prejudice of a witness,....." (Emphasis added.) The "such as" language preceding the allowable uses clearly means that the list is not exhaustive. As stated by the Arkansas Supreme Court:

> "The policy of the Rules of Evidence is 'to the end that the truth may be ascertained.' Rule 102. The purpose of Rule 408 is to promote complete candor between the parties to the settlement nego-

tion was not repeated at trial, but one was not needed to preserve the issue for appeal. *See* Court of Appeals' discussion at 112 Idaho 563–64, 733 P.2d at 784–85.

2. I.R.E. 408 reads as follows:
   "**Rule 408. Compromise and offers to compromise.**—Evidence of (1) furnishing, offering, or promising to furnish, or (2) accepting, offering, or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for, invalidity of, or amount of the claim or any other claim. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule does not require exclusion if the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution."

tiations but not to protect false represen- tations. Thus, when a party has made a statement at trial which is inconsistent with a statement made during settlement negotiations, the inference is that one of the statements is knowingly false. In such a situation, we conclude that the mandate in Rule 102 to interpret the rules so as to foster the values of 'fairness' and 'truth' requires us to hold that prior inconsistent statements made in the course of settlement negotiations should be admitted for impeachment purposes." *Missouri Pacific Railway Company v. Arkansas Sheriff's Boy's Ranch, supra,* 655 S.W.2d at 395.

Thus, we hold a trial may allow the use of statements contained in settlement negotiations for the purpose of impeaching witnesses who give contrary testimony at trial. The trial judges have broad discretion in determining admissibility of impeachment evidence, and their decision will not be overturned absent a clear showing of abuse. *Quick v. Crane,* 111 Idaho 759, 780, 727 P.2d 1187 (1986).

This conclusion was also reached by the Court of Appeals. However, the Court ran afoul in trying to articulate the weighing process used in evaluating the admissibility of impeachment evidence. The competing goals of truth seeking and settlement encouragement underlie Rule 408. In an attempt to seek a balance between these competing goals the appellate court ruled that prior inconsistent statement "should be admitted only if it strongly suggests that a witness is perjuring himself at trial or if any unfair prejudice is likely to be insubstantial." *Davidson v. Beco, supra,* 112 Idaho at 566, 733 P.2d at 787.

██ This test unduly narrows the balancing test as contemplated by the drafters of the Rules of Evidence. Rule 403 is an effort to regularize and channel the use of judicial discretion in the administration of the Rules of Evidence, and contains the rule of thumb on the trial court weighing process. C. WRIGHT and K. GRAHAM, 22 FEDERAL PRACTICE AND PROCE- DURE: EVIDENCE § 5212 (1978). Rule 403 provides:

"**Rule 403. Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time.**—Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

The rule creates a balancing test. On one hand, the trial judge must measure the probative worth of the proffered evidence. The trial judge, in determining probative worth, focuses upon the degree of relevance and materiality of the evidence and the need for it on the issue on which it is to be introduced. *People v. Mota,* 115 Cal. App.3d 227, 171 Cal.Rptr. 212 (1981). At the other end of the equation, the trial judge must consider whether the evidence amounts to unfair prejudice. Here, the concern is whether the evidence will be given undue weight, or where its use results in an inequity, *Sclafani v. Peter S. Cusimano, Inc.,* 130 Mich.App. 728, 344 N.W.2d 347 (1983), or as several commentators have suggested, "illegitimate persuasion." WRIGHT & GRAHAM, *Supra,* § 5212. Only after using this balancing test, may a trial judge use his discretion to properly admit or exclude the proffered evidence.

The Court of Appeals' test gives due consideration to only one side of the equation—unfair prejudice. Regardless of the materiality, relevance, or lack of alternative measures, the Court of Appeals' test requires exclusion if the resulting prejudice is anything more than insubstantial. The concerns expressed by the Court of Appeals are legitimate. The dangers are high that, even with a limiting instruction, the jury will substantively consider the impeachment evidence. However, the trial judge, in exercising his discretion, will consider the heavy weight of this factor when applying the Rule 403 balancing test.

■ Here, the statement in the settlement letter indicated that the offer of a tractor by Beco to Davidson had previously been rejected. Of course, this is contrary to Beck's testimony at trial that Davidson had accepted the tractor in full satisfaction of the debt. The probative value of the statement in the settlement letter is great in that it tends to show Beck's testimony is unreliable. Probative evidence is always prejudicial to someone. *State v. Fenley,* 103 Idaho 199, 203, 646 P.2d 441, 445 (Ct. App.1982). However, Davidson had no other alternative evidence, less prejudicial, with which to impeach Beck's testimony.

On the other hand, as we noted above, the prejudicial effect of this evidence is high. However, we cannot say that its prejudicial effect so substantially outweighed its probative value that its admission amounted to clear abuse. Thus, we conclude the trial court properly admitted the evidence for impeachment purposes. However, the judgment of the trial court is reversed pursuant to the Court of Appeals' rulings with respect to the personal liability of the corporate debt and attorney fees.

Costs to Davidson.

No attorney fees on review.

BAKES, BISTLINE and HUNTLEY, JJ., concur.

SHEPARD, Chief Justice, concurring specially.

I concur with the majority in its holding that the trial court correctly admitted the offer of settlement letter. However, I do not agree with the majority's analysis of the possibility of unfair prejudice resulting from the admission of such settlement offer since the evidence (the letter) had direct relevance to the issue before the court.

This case differs from the usual circumstances in which a settlement offer is introduced to infer liability of a defendant only because he offered to settle. Here, BECO asserted as a defense that the claim had been settled. BECO's president testified

that the claim had been settled and by what means. The offer of settlement letter impeached that testimony. Here the trial court permitted the contents of the letter as evidence that no settlement had been reached between the parties. Thus, settlement was the issue, the letter was relevant to that issue, and was correctly admitted.