# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 38338

| | | |
|---|---|---|
| MOSELL EQUITIES, LLC, an Idaho limited liability company, | ) ) ) | Boise, January 2013 Term |
| Plaintiff/Respondent/Cross Appellant, | ) ) | 2013 Opinion No. 20 |
| v. | ) ) | Filed: February 22, 2013 |
| BERRYHILL & COMPANY, INC., an Idaho corporation, | ) ) ) | Stephen W. Kenyon, Clerk |
| Defendant/Appellant/Cross Respondent, | ) ) ) ) | |
| and | ) ) | |
| JOHN E. BERRYHILL, III, and AMY BERRYHILL, | ) ) ) | |
| Defendants. | ) ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, in and for Ada County. The Hon. Dennis Goff, Senior District Judge.

The order of the district court is reversed.

Daniel E. Williams; Thomas, Williams & Park, LLP, Boise; argued for Berryhill & Company and for Mr. Berryhill.

Eric R. Clark; Clark & Associates, Attorneys, Eagle; argued for Mosell Equities.

---

EISMANN, Justice.

This is an appeal out of Ada County from an order granting a judgment notwithstanding the verdict in a commercial lawsuit in which the jury found in favor of the defendant. We reverse the order and remand this case for consideration of the plaintiff's motion for a new trial.

## I.

## Factual Background.

Glenn Mosell is a commercial real estate broker in investment sales and a land developer. He owned about 290 acres of property in the Sunnyslope area of Canyon County, and he envisioned developing it and other land that he had an option to purchase into a destination resort. The development would include five-acre parcels of vineyards for second homes or resort-based residences; a state-of-the-art winery, tasting room, bulk wine & storage and custom crush wine facility; a luxury 4-star boutique hotel of 100 units; a world class destination and day spa; a gourmet restaurant; an event and business conference center; polo fields; an equestrian center; a sporting and athletic club; an amphitheater for music events and concerts; and a greenhouse and commercial fruit, produce and agricultural product market. The 290 acres included 153 acres of mature vineyards, and he had options for an additional 300 acres of vineyards. The name of the proposed development would be Polo Cove.

He contacted John Berryhill, a restaurateur in Boise, to see if he would be interested in building the restaurant in the development. Mr. Berryhill was the owner and president of Berryhill & Company, which operated a restaurant and catering business in a strip mall on Broadway Avenue in Boise. Mr. Berryhill agreed to participate in the proposed development, but not to build the restaurant.

Beginning in September 2005, Mr. Berryhill was paid a consulting fee by Mosell Equities, LLC, of which Mr. Mosell was the owner and managing member. The consulting fee was for designing a restaurant for the Polo Cove development. The last check to Mr. Berryhill was dated August 7, 2006, and he was paid a total of $25,000.

On April 12, 2007, Berryhill & Company signed a lease of space in downtown Boise in order to move the restaurant from the strip mall to that space. Messrs. Mosell and Berryhill both signed a personal guaranty of Berryhill & Company's obligations under the lease. Berryhill & Company then began making tenant improvements to the leased property.

On June 28, 2007, Mosell Equities paid Berryhill & Company the sum of $50,000 by check. The word "loan" was written on the memo line of the check. Mr. Berryhill made a photocopy of the check and then wrote on the photocopy below the check the following:

> This is a loan from Mosell Equities to cover some misc. downtown expenses during our bookkeeper transition. It will go into the general check

register + be used for any billing of payables needed for downtown or Berryhill & Co.

It will be transitioned into part of Glenn's "buy in" of MoBerry Venture Corp. Inc.

Messrs. Berryhill and Mosell then both signed the document, which was admitted into evidence as Exhibit 1 in the trial and will hereafter be referred to as "Exhibit 1."

Over the next ten months, Mosell Equities issued nine additional checks to Berryhill & Company. Each of them had the word "loan" written on the memo line except for two. The check dated October 9, 2007, had "kitchen equipment" written on the memo line, and the last check dated April 30, 2008, had "suite 101 TI's"[1] written on the memo line. The checks totaled $405,000.

The restaurant opened in the downtown location in August 2007. The space initially rented for the restaurant totaled about 6,000 square feet. Berryhill & Company later rented additional space of about the same size in which it developed ballrooms and other facilities. Mosell Equities paid for the extra leased space for a time. Because of the economic downturn, Mr. Mosell decided not to proceed with the Polo Cove project and did not launch the intended sales effort in 2008. Later that year, Mosell Equities stopped paying the rent on the additional space, and Mr. Mosell and Mr. Berryhill ended their relationship.

On May 28, 2009, Mosell Equities filed this action against Berryhill & Company, Mr. Berryhill, and his wife. On September 11, 2009, it filed an amended complaint alleging six claims for relief, which were: (1) breach of an express contract; (2) breach of an implied contract; (3) unjust enrichment; (4) conversion; (5) fraud; and (6) piercing the corporate veil. The district court granted the Defendants' motion to dismiss the claim for piercing the corporate veil, which was the only claim made against Mr. Berryhill's wife. The Defendants then filed an answer, and Berryhill & Company filed a counterclaim for fraud.

The case was tried to a jury in September 2009. During the trial, Messrs. Mosell and Berryhill provided widely divergent testimony regarding their relationship and what had transpired.

Mosell Equities called Mr. Mosell as a witness, and he testified that he was interested in owning a half-interest in a restaurant and desired to invest in Berryhill & Company's restaurant

---

[1] "TI's" meant tenant improvements.

3

because it was profitable and would give him cash flow. He also thought that he could enhance its value by bringing opportunity to it because he was a partner in Polo Cove and because of his real estate background. Initially, he and Mr. Berryhill intended to be co-owners of a holding company called MoBerry, Inc., (mentioned in Exhibit 1) that would own Berryhill & Company. Mr. Mosell would invest $387,000 in that entity and Mr. Berryhill would invest the stock of Berryhill & Company. Later, they decided that Mr. Mosell would simply purchase a one-half interest in Berryhill & Company for $400,000, even though a one-half interest in that company was not worth that much. He testified that the checks to Berryhill & Company were loans because Mr. Berryhill wanted to move his restaurant to downtown Boise, and it was also Mr. Berryhill's idea to expand the leased space in downtown Boise in order to have ballrooms and other facilities and so that he could move the catering business to that location. The loaned money totaling $405,000 was to be applied to purchase the one-half interest in Berryhill & Company, but Mr. Berryhill did not go through with the agreement. Mr. Mosell stated that Polo Cove was a non-entity, and that his reference to Mr. Berryhill as a partner in that project did not refer to a legal partnership, but only that Mr. Berryhill was acting in a collaborative or supportive effort for the development which has now been shelved.

Mosell Equities also called Mr. Berryhill as a witness to testify in its case in chief about the transaction between him and Mr. Mosell. Mr. Berryhill testified that when Mr. Mosell asked him if he would build a restaurant in the proposed Polo Cove development, Mr. Berryhill refused to do so and told him that 90% of new restaurants fail. Mr. Berryhill did not want to build a restaurant in the Polo Cove development on his own, and Mr. Mosell did not want to own a restaurant. They therefore decided to be partners in the development. Mr. Berryhill worked extensively on Polo Cove through July or August of 2008, working with the architects. Although he was initially paid consulting fees, he agreed that they stop because Mr. Mosell said he was going to be making much more money from the development. They agreed to be partners in the Polo Cove development because Mr. Mosell needed his expertise, name, and knowledge in order to have the type of restaurant that Mr. Mosell wanted, and Mr. Berryhill needed Mr. Mosell in order to build a restaurant in the development. As they were working on Polo Cove, Mr. Mosell eventually suggested that Berryhill & Company's restaurant be moved from the strip mall on Broadway to the downtown area because he wanted to "build a sexy, downtown location restaurant, showcase for Polo Cove, to bring investors to, so he didn't have to take them to a strip

4

mall, so he could sell them on the aspect of Polo Cove." Mr. Berryhill agreed to the move because he viewed it as part of the Polo Cove development. It was necessary to make tenant improvements before moving into the leased space. The first check was to pay some of the bills that were due for improvements and to pay Berryhill & Company's payroll. Its bookkeeper had recently died, and the new bookkeeper had lost the electronic financial records when she transferred them to her home computer. When Mr. Berryhill saw the check, he asked why the word "loan" was written on the check, because they had never discussed the money as a loan. Mr. Mosell stated that for tax purposes they had to call it a loan until they could work out the terms of their formal relationship. After the restaurant was moved to the downtown location, Mr. Mosell wanted to expand the leased space in order to improve marketing of the Polo Cove development. Mr. Berryhill would not have agreed to either the move downtown or the expansion had it not been to promote the Polo Cove development.

In the Defendants' case in chief, Mr. Berryhill testified that he had no desire to expand the leased downtown space on his own because the restaurant could not support the extra rental payments. Mr. Mosell said he would fund the ballrooms and Polo Cove would pay for the showroom. A few months after the expansion was completed, Mosell Equities stopped making the rent payments for the expanded space and Mr. Mosell terminated his relationship with Mr. Berryhill. The Polo Cove development was the only reason that the restaurant was moved to the downtown location and the only reason for the expansion. Now, Berryhill & Company has about the same income it did at its location on Broadway, but it is paying $15,000 to $20,000 more in rent each month, and, as of April 17, 2010, it was $149,255 in arrears in rental payments and late fees for the expansion. He also testified that the cost of the tenant improvements for the restaurant was $100,048.43, and the cost of the tenant improvements for the expansion was $193,801.29, all of which were paid by Berryhill & Company. In addition, there are monthly impact fees that Berryhill & Company pays to the city.

The jury returned a finding that Mosell Equities failed to prove its claims against Berryhill & Company for breach of an express contract, breach of an implied contract, and unjust enrichment; that Mosell Equities proved its claim against Berryhill & Company for conversion of property valued at $2,016.85; that Mosell Equities failed to prove its claim of fraud against Mr. Berryhill and Berryhill & Company; and that Berryhill & Company failed to prove its claim of fraud against Mosell Equities.

5

Mosell Equities filed a motion for a judgment notwithstanding the verdict or, in the alternative, for a new trial. The motion is not in the record on appeal, but in its supporting memorandum Mosell Equities asked the district court to set aside the jury verdict and to grant it a judgment notwithstanding the verdict on each count.[2] The supporting memorandum indicated that the alternative motion for a new trial was on the ground of insufficiency of the evidence to justify the verdict. After oral argument, the district court orally granted the motion for a judgment notwithstanding the verdict as to the claim of breach of an express contract and denied the motion as to the other claims. It also denied the motion for a new trial. On October 26, 2010, the court entered its Order Granting Plaintiff's Motion for Judgment Notwithstanding the Verdict on Count 1 of Its Complaint. That order stated as follows:

> During the hearing, the Court heard oral argument from each counsel, and thereafter stated the Court's decision and bases for that decision on the record. The Court now incorporates its comments, rationale, and ultimate decision communicated to counsel on October 6, 2010 as if set forth herein.
> NOW, THEREFORE, IT IS HEREBY ORDERED, the Plaintiff's Motion For Judgment Notwithstanding the Verdict on Count 1 is hereby GRANTED.
> NOW, THEREFORE, IT IS ALSO HEREBY ORDERED, the Plaintiff's Motion for Judgment Notwithstanding the Verdict on the remaining counts, and Plaintiff's Motion For New Trial are hereby DENIED.

Berryhill & Company filed a motion to amend or correct the order. After hearing argument on that motion, the district court entered an "Order of Clarification" on November 23, 2010, which provided as follows:

> NOW, THEREFORE, IT IS HEREBY ORDERED that the Plaintiff's Motion For Judgment Notwithstanding the Verdict on Count I: express contract is hereby GRANTED.
> IT IS FURTHER ORDERED that the Plaintiff's Motion For New Trial as to Count I: express contract is moot.
> IT IS FURTHER ORDERED that the Plaintiff's Motion for Judgment Notwithstanding the Verdict and Plaintiffs Motion For New Trial on the remaining counts are hereby DENIED.

On December 6, 2010, Berryhill & Company filed a notice of appeal from the order entered on October 26, 2010, and on December 17, 2010, Mosell Equities filed a notice of cross appeal from the same order.

---

[2] Mosell Equities contended that it was entitled to at least $20,000 on its conversion claim.

## II.
## Did the District Court Err in Granting the Motion
## for a Judgment Notwithstanding the Verdict?

When a trial court decides a motion for a judgment notwithstanding the verdict, it cannot weigh the evidence or pass on the credibility of witnesses. It must simply determine whether reasonable minds could have reached the same conclusion as the jury when the evidence and all reasonable inferences that can be drawn therefrom are considered in the light most favorable to the nonmoving party. We use that same standard when reviewing the trial court's ruling on the motion.

*O'Shea v. High Mark Development, LLC*, 153 Idaho 119, ___, 280 P.3d 146, 148 (2012) (citations omitted). The party making the motion for a judgment notwithstanding the verdict necessarily admits the truth of all of the opposing party's evidence and every legitimate inference that could be drawn from that evidence in the light most favorable to the opposing party. *Quick v. Crane*, 111 Idaho 759, 763, 727 P.2d 1187, 1191 (1986).

a. **The district court erred in concluding that there was insufficient evidence to support the verdict.** In its order entered on October 26, 2010, granting the motion for a judgment notwithstanding the verdict, the district court incorporated by reference the oral statements it had made during the hearing as the bases for granting the motion. The district court stated that it was setting aside the jury verdict because reasonable minds could not have concluded that Exhibit 1 was not a contract for Mosell Equities to make a loan to Berryhill & Company. The court stated:

> But here's what we have. We have a signed writing, Exhibit No. 1. And we have that term, this is a loan from Mosell Equities to cover the downtown expenses during our bookkeeper transition. Now, that's clear that's what the parties intended. There's no ambiguity in that, there's—it's clear.
> . . . .
> So, the Court does not see where the evidence—there's sufficient quantity or probative value of the writ—of the evidence, of John Berryhill's evidence, to support the jury's verdict with regard to the first question asked, breach of contract of express contract.
> And so, the Court will set aside the verdict and order a new trial in this case on the breach of contract, issue No. 1.

Where there is no objection to the jury instructions, the sufficiency of the evidence to support a verdict must be based upon the jury instructions. *Bolognese v. Forte*, ___ Idaho ___,

___ P.3d ___, ___, n.6, 2012 WL 5834594 (2012). That is because the jury is to apply the law as set forth in the jury instructions to the facts in order to reach the verdict. Whether the evidence was sufficient to support the verdict will therefore depend upon the law as set forth in the jury instructions.

In this case, the jury was instructed: "The terms of the contract are in dispute. You must determine what was intended by the parties as evidenced by the contract in this case." They were then instructed: "In making this determination you should consider, from the evidence, [that] . . . [l]anguage must be given its ordinary meaning, *unless you find from the evidence that a special meaning was intended*." (Emphasis added.) What was meant by "special meaning" was not defined. Based upon the testimony of Mr. Berryhill, the jury could have found that the word "loan" in Exhibit 1 and on the checks had a special meaning other than what would be its ordinary meaning. That special meaning was that it was just a label for tax purposes. The payments were to create the downtown restaurant and other facilities in order to help convince others to invest in Polo Cove, and therefore the payments related to moving the restaurant downtown and constructing the tenant improvements in both the originally leased space and in the expansion were simply sums spent to market the Polo Cove development.

In addition, the question in the special verdict was, "Was there an express contract between Plaintiff Mosell Equities, LLC, and Defendant Berryhill & Company, Inc. which was breached?" The jury answered the question, "No," but it could have done so on the ground that there was no breach. The district court initially thought the question was only whether there was an express contract. After stating that it was setting aside the verdict, it stated, "So, that means it's going to be set for another trial, for the jury to decide the issues of intent, amendment, substantial performance, breach, and amount of damages, not whether there was a contract." After Defendants' counsel pointed out to the court the actual language of the special verdict, the court stated "that reasonable minds could differ on, as to how much is the loan for, what does the buy-in mean, what happens if MoBerry's not completed, is that substantial performance?" However, the court still stated that it was granting the motion. The court stated, "All I'm doing—I said, I'm setting aside the verdict because, as a matter of law, Exhibit 1 is a contract, a binding contract. What we don't know is what does it mean."

As stated above, the jury was asked whether Mosell Equities proved that there was an express contract that was breached. When, as here, the special verdict is a compound question,

the court cannot grant a judgment notwithstanding the verdict unless it concludes that reasonable minds could not have answered both of the questions in the manner that the jury did.

The district court held that as a matter of law there was an express contract, but there were genuine issues as to what the terms of that contract were, whether it was amended,[3] and whether it was breached. In this circumstance, the court cannot grant a judgment notwithstanding the verdict on the assumption that the jury may have found that there was no express contract rather than that there was no breach of the contract. The court could only grant a directed verdict if it concluded that reasonable minds could not have reached the conclusion that the contract was not breached, which the district court obviously could not find when it held that there were issues of fact as to what the terms of the contract were and whether it had been amended.

On cross appeal, Mosell Equities asserts that the district court erred in failing to grant a judgment notwithstanding the verdict on "Count 1 in its entirety and found both an express contract and breach of that contract." Its contention is based upon the assumption that the agreement was to make loans to Berryhill & Company pending a further agreement as to the creation of a new entity (MoBerry); that because the new entity was not created, the payments remained loans; and that Berryhill & Company breached the agreement by failing to repay the loans. As explained above, there was sufficient evidence from which a reasonable jury could have found that the payments were not loans.

**b. The district court erred in granting the motion for a judgment notwithstanding the verdict on the ground that there was an error in the jury instructions.** In its Order of Clarification entered on November 23, 2010, the district court stated, with respect to the granting of the motion for a judgment notwithstanding the verdict, that "[t]he Court ruled that Judge Williamson had granted summary judgment that there was an express contract between the parties as set forth in Exhibit 1. . . . This Court failed to properly instruct the jury to reflect the prior summary judgment order of Judge Williamson." The district court erred in granting a judgment notwithstanding the verdict on this ground.

Judge Williamson had been the presiding judge in this case until just before the trial, and Judge Goff was then assigned to preside over the trial. During the hearing on the motion for a

---

[3] The district court instructed the jury: "An express contract may be amended or modified by an agreement of the parties. This requires all of the elements of any other express contract."

judgment notwithstanding the verdict, Judge Goff stated: "Judge Williamson did instruct in—in the summary judgment. She did not grant the summary judgment as to the whole count, but she found that, as a matter of law, Exhibit 1 was a contract. And I should have instructed the jury as to that contract."

Judge Goff misread Judge Williamson's decision because she did not grant summary judgment that there was an express contract. Both parties had moved for summary judgment as to Count I of the amended complaint. In her memorandum decision, Judge Williamson wrote, "In conclusion, the Court finds that the June 2008 agreement [Exhibit 1] does constitute a valid contract; however, its terms are ambiguous and its interpretation is a question of fact." However, in another part of her decision addressing Count I, Judge Williamson wrote, "The question of whether the contract or contracts were breached hinges on whether the trier of fact determines that there was a binding contract formed and what a reasonable time for performance of the contract is." She then ruled: "There remains material questions of fact. The court therefore denies the Plaintiff's and Defendant's Motions for Summary Judgment as to Count One." In the Conclusion portion of her decision, Judge Williamson wrote: "The Court Denies Plaintiff's Motion for Summary Judgment. The Court also denies Defendants' Motion for Summary Judgment except that it finds as a matter of law that the October 9, 2007, and April 30, 2008, checks are not binding contracts." Thus, Judge Williamson did not grant summary judgment that there was an express contract. She denied Mosell Equities's motion for summary judgment in its entirety, and granted Berryhill & Company's motion in part, holding that two of the checks were not express contracts.

Even had Judge Williamson granted summary judgment that Exhibit 1 was an express contract, an order granting a motion for judgment notwithstanding the verdict cannot be based upon an alleged error in a jury instruction. The issue regarding a motion for a judgment notwithstanding the verdict is "whether, as a matter of law, the jury's verdict was supported by evidence of sufficient quantity and probative value that reasonable minds could have reached a similar conclusion to that of the jury." *Bates v. Seldin*, 146 Idaho 772, 776, 203 P.3d 702, 706 (2009). Although a motion for a new trial may be granted for an error in law occurring at the trial, I.R.C.P. 59(a), which error could include an erroneous jury instruction, *Messmer v. Ker*, 96 Idaho 75, 78, 524 P.2d 536, 539 (1974), that is not a ground for a judgment notwithstanding the verdict. In this case, because Mosell Equities did not object to the jury instructions, it could not

10

even be granted a new trial based upon an alleged error in them. *Saint Alphonsus Diversified Care, Inc. v. MRI Assoc., LLP*, 148 Idaho 479, 491, 224 P.3d 1068, 1080 (2009).

      **c. The district court erred in granting the motion for a judgment notwithstanding the verdict as to one element of a cause of action.** A motion for a judgment notwithstanding the verdict seeks a judgment that is contrary to the verdict. When the court grants such a motion, it must specify the judgment to be entered. That judgment must comply with Rule 54(a) of the Idaho Rules of Civil Procedure, which states that "[a] judgment shall state the relief to which a party is entitled on one or more claims for relief in the action."

      As we explained in *Spokane Structures, Inc. v. Equitable Inv., LLC*, 148 Idaho 616, 619, 226 P.3d 1263, 1267 (2010), regarding that requirement:

> The "relief to which the party . . . is entitled" must be read in connection with other rules. Rule 8(a)(1) provides, "A pleading which sets forth a claim for relief . . . shall contain . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief to which he deems himself entitled." The "demand for judgment for the relief to which he deems himself entitled" obviously refers to the relief that the party seeks in the lawsuit. . . . The relief to which a party is entitled is the specific redress or remedy that the court determines the party should receive in the litigation, or with respect to a claim for relief in the litigation.

      The court cannot grant a judgment as to one element of a claim for relief. The elements for a claim for breach of contract are: (a) the existence of the contract, (b) the breach of the contract, (c) the breach caused damages, and (d) the amount of those damages. *O'Dell v. Basabe*, 119 Idaho 796, 813, 810 P.2d 1082, 1099 (1991) (plaintiff has the burden of proving the existence of a contract and the fact of its breach); *Suitts v. First Sec. Bank of Idaho, N.A.*, 110 Idaho 15, 22, 713 P.2d 1374, 1381 (1985) (the damages recoverable must be caused by the breach); *Watkins Co., LLC v. Storms*, 152 Idaho 531, 539, 272 P.3d 503, 511 (2012) (the amount of damages must be proved). A judgment cannot be entered on one element of a cause of action. *Rife v. Long*, 127 Idaho 841, 844-45, 908 P.2d 143, 146-47 (1995) (where complaint alleged several theories to prove a claim for negligence, a judgment could not be entered on one of those theories); *Glacier Gen. Assur. Co. v. Hisaw*, 103 Idaho 605, 608, 651 P.2d 539, 542 (1982) (judgment cannot be entered establishing liability but leaving the issue of damages for trial); *Twin Falls Cnty. v. Knievel*, 98 Idaho 321, 323, 563 P.2d 45, 47 (1977) (cannot enter a judgment for liability but not damages). Therefore, the district judge erred in attempting to grant a

judgment notwithstanding the verdict as to one element of a cause of action. A judgment notwithstanding the verdict can only be entered if it resolves an entire cause of action.

## III.
### Did the District Court Err in Excluding a Letter from Evidence?

Mosell Equities alleges that the district court erred in ruling that a letter from Mr. Williams, Defendants' counsel, was inadmissible. It was apparently ruled inadmissible pursuant to Rule 408 of the Idaho Rules of Evidence. In a footnote, Mosell Equities states: "Berryhill filed a Motion in Limine to exclude Williams' letter that Judge Goff granted during the pretrial conference, which was not recorded. While no order was entered, the parties discussed Judge Goff's ruling on the record during trial." The cited discussion on the record was the court ruling that Mosell Equities could have a witness quote to the jury the first sentence in the second paragraph of the letter because that portion of the letter was not a statement in furtherance of negotiations, or compromise, or settlement. That discussion hardly gives the court's reasoning with respect to the remainder of the letter, nor does it give the arguments made in the unrecorded conference regarding the admissibility of the rest of the letter. There is nothing in the record on appeal showing the information presented to the district court regarding the motion, the arguments made, or the court's reasoning in granting the motion. In the absence of an adequate record, we will not presume error. *Western Cmty. Ins. Co. v. Kickers, Inc.*, 137 Idaho 305, 306, 48 P.3d 634, 635 (2002).

Mosell Equities argues that the letter was admissible to impeach Mr. Berryhill. A trial judge "may allow the use of statements contained in settlement negotiations for the purpose of impeaching witnesses who give contrary testimony at trial." *Davidson v. Beco Corp.*, 114 Idaho 107, 109, 753 P.2d 1253, 1255 (1987). The trial judge has broad discretion in deciding whether such evidence is admissible for impeachment purposes, and that decision will not be overturned absent a clear showing that the discretion was abused. *Id.* Mosell Equities has not pointed to any place in the record where it argued to the district court that anything in the letter was admissible to impeach Mr. Berryhill's trial testimony. "This Court does not review an alleged error on appeal unless the record discloses an adverse ruling forming the basis for the assignment of error." *Ada Cnty. Highway Dist. v. Total Success Invs., LLC*, 145 Idaho 360, 368, 179 P.3d 323, 331 (2008).

12

## IV.
## Issue on Remand.

In its brief on appeal, Mosell Equities argues that Judge Goff properly granted its motion for a new trial. In the order of clarification, the district court ruled as follows:

> NOW, THEREFORE, IT IS HEREBY ORDERED that the Plaintiff's Motion For Judgment Notwithstanding the Verdict on Count I: express contract is hereby GRANTED.
>
> IT IS FURTHER ORDERED that the Plaintiff's Motion For New Trial as to Count I: express contract is moot.
>
> IT IS FURTHER ORDERED that the Plaintiff's Motion for Judgment Notwithstanding the Verdict and Plaintiff's Motion For New Trial on the remaining counts are hereby DENIED.

Rule 50(c)(1) of the Idaho Rules of Civil Procedure provides, "If the motion for judgment notwithstanding the verdict, provided for in subdivision (b) of this rule, is granted, the court shall rule on the motion for new trial by determining whether it should be granted if the judgment is thereafter vacated or reversed." However, the court did not rule on the motion for a new trial with respect to Count I. It ordered that the motion for a new trial with respect to that count is moot. It apparently concluded that because it granted a judgment notwithstanding the verdict as to one element of the cause of action, there would have to be a new trial as to the other elements. That is not the equivalent of granting the motion for a new trial.

"A trial judge may grant a new trial on that ground [insufficiency of the evidence] if, after making his or her own assessment of the credibility of the witnesses and weighing the evidence, the judge determines that the verdict is not in accord with the clear weight of the evidence." *Hudelson v. Delta Intern. Mach. Corp.*, 142 Idaho 244, 248, 127 P.3d 147, 151 (2005). The verdict in this case was that there was not an express contract between Mosell Equities and Berryhill & Company that was breached. To grant a new trial, the district court would have to find that the jury's answer to the entire question was against the clear weight of the evidence, and the district court did not do so.

To grant a new trial, the judge must also conclude that a different result would follow a retrial. *Heitz v. Carroll*, 117 Idaho 373, 378, 788 P.2d 188, 193 (1990). "This standard requires more than a mere possibility; there must be a probability that a different result would be obtained in a new trial." *Sheridan v. St. Luke's Reg. Med. Ctr.*, 135 Idaho 775, 782, 25 P.3d 88, 95

(2001). In this case, the district court did not make any determination that a different result would be obtained in a new trial.

The court denied Mosell Equities's motion for a judgment notwithstanding the verdict and its motion for a new trial as to counts two, three, four, and five of the amended complaint, and Mosell Equities has not appealed those rulings. We reverse the district court's grant of a judgment notwithstanding the verdict as to count one of the amended complaint. The only issue remaining undecided is whether Mosell Equities should be granted a new trial on its breach of an express contract claim against Berryhill & Company.

## V.
### Is Any Party Entitled to an Award of Attorney Fees on Appeal?

Berryhill & Company appealed from the order granting a judgment notwithstanding the verdict and defended the cross appeal. The issues in both relate to the same claim for relief. It seeks an award of attorney fees on appeal pursuant to Idaho Code section 12-120(3) on the ground that the gravamen of Mosell Equities's claim deals with a commercial transaction. Although Berryhill & Company prevailed on appeal and on the cross appeal, we do not yet know if it will prevail in this action. If it does, then the district court may award it attorney fees for this appeal. *Spokane Structures*, 148 Idaho at 621, 226 P.3d at 1268.

Mosell Equities appealed asking this Court to order that Judge Goff enter judgment against Berryhill & Company for the sum of $405,000. It seeks an award of attorney fees under section 12-120(3) both for defending the appeal and prosecuting the cross appeal. Because Mosell Equities has not prevailed on either the appeal or its cross appeal, it is not entitled to an award of attorney fees for the appeal.

## VI.
### The Purported Judgment Is a Nullity.

On October 26, 2010, the district court entered its order granting Mosell Equities's motion for a judgment notwithstanding the verdict. Berryhill & Company filed a motion to amend or correct the order, and on November 23, 2010, the district court entered an order of clarification. On December 6, 2010, Berryhill & Company filed a notice of appeal from the

order granting a judgment notwithstanding the verdict. On January 10, 2011, the district court entered a document entitled "Judgment" which provided as follows:

> IT IS HEREBY ORDERED that the Plaintiff's Motion For Judgment Notwithstanding the Verdict on Count I: express contract is hereby GRANTED.
> IT IS FURTHER ORDERED that the Plaintiff's Motion For New Trial as to Count I: express contract is moot.
> IT IS FURTHER ORDERED that the Plaintiff's Motion for Judgment Notwithstanding the Verdict and Plaintiff's Motion For New Trial on the remaining counts are hereby DENIED.
> IT IS SO ORDERED.

The district court's purported judgment is a nullity for two reasons.

First, in a civil action, an appeal can be taken from "[a]n order granting or denying a motion for judgment notwithstanding the verdict." I.A.R. 11(a)(6). Upon the filing of the notice of appeal by Berryhill & Company on December 6, 2010, the district court was divested of jurisdiction except to take the actions listed in Rule 13(b) of the Idaho Appellate Rules. *H & V. Eng'g., Inc. v. Idaho State Bd. of Prof'l Eng'rs and Land Surveyors*, 113 Idaho 646, 648, 747 P.2d 55, 57 (1987). That rule provides that during the pendency of the appeal the district court has the power and authority to rule "upon any motion for judgment notwithstanding the verdict," I.A.R. 13(b)(5), but it does not provide that the court has the power and authority to enter a judgment. Therefore, once the appeal was filed, the district court did not have the power and authority to enter a judgment.

Second, the purported judgment entered by the district court is not a judgment because it does not comply with Rule 54(a) of the Idaho Rules of Civil Procedure. As explained above, "A judgment shall state the relief to which a party is entitled on one or more claims for relief in the action." I.RC.P. 54(a). The purported judgment in this case did not do so. It attempted to grant relief on one element of a claim. A judgment must also be "a separate document." *Id*. The purported judgment is not a separate document because it includes an order denying the motion for a judgment notwithstanding the verdict on the other claims, an order stating that the order for a new trial on Count I was moot, and an order denying the motion for a new trial with respect to the other claims. It therefore is not a judgment. *Estate of Holland v. Metro. Prop. and Cas. Ins. Co.*, 153 Idaho 94, ___, 279 P.3d 80, 85 (2012) (a document entitled "Amended Judgment of Dismissal with Prejudice" was not a separate document as required by Rule 54(a), and therefore

not a judgment, where the document included an order denying the Plaintiffs' motion for reconsideration).

## VII.
## Conclusion.

We reverse the order granting respondent's motion for a judgment notwithstanding the verdict. We award appellant costs on appeal and remand this case for further proceedings that are consistent with this opinion.

Chief Justice BURDICK, Justices J. JONES, W. JONES, and HORTON **CONCUR.**